[No. D023882. Fourth Dist., Div. One. July 11, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
ABONILICO LAMAR CARROLL, Defendant and Appellant.

## COUNSEL

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Sara Gros-Cloren, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—After two jury trials, Abonilico Lamar Carroll was convicted of kidnapping in violation of Penal Code[1] section 207, disobeying a court order in violation of section 273.6, subdivision (a), resisting a police officer in violation of section 148, subdivision (a), and battery in violation of section 242. In the first trial the jury was unable to reach a verdict on the kidnapping offense. In the second trial Carroll was convicted of kidnapping.

After the verdict in the second trial Carroll waived jury trial on the alleged priors and admitted two prison priors within the meaning of section 667.5, subdivision (b), one serious felony prior conviction within the meaning of section 667, subdivision (a), and one serious/violent felony prior conviction within the meaning of section 667, subdivisions (b)-(i).

Carroll was sentenced to a determinate term of fifteen years, consisting of the middle term of five years for kidnapping, doubled pursuant to section 667, subdivision (e), and five years for the serious felony prior. The trial court struck the prison priors at the time of sentencing.

Carroll appeals, raising various challenges to the applicability of the three strikes law to his current offenses. Additionally, he contends the instruction given on the burden of proof was incorrect and that he was not properly advised of his trial rights before admitting the alleged priors.

---

[1]All statutory references are to the Penal Code unless otherwise specified.

## I

### *CALJIC No. 2.90*

■ The trial court instructed the jury on the burden of proof, using the 1994 revision to CALJIC No. 2.90.[2] Carroll contends the instruction, as it has been modified to remove references to "moral evidence" and "moral certainty," does not adequately define reasonable doubt. We disagree.

After the opinion of the United States Supreme Court in *Victor* v. *Nebraska* (1994) 511 U.S. 1 [127 L.Ed.2d 583, 114 S.Ct. 1239], our Supreme Court revisited the definition of reasonable doubt as then contained in CALJIC No. 2.90. *People* v. *Freeman* (1994) 8 Cal.4th 450 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888] suggested the instruction be modified by removing the references to moral evidence and moral certainty. The court said:

"Although modifying the standard instruction is perilous, and generally should not be done, today it might be more perilous for trial courts *not* to modify it in a narrow and specific manner in light of the [United States Supreme Court's] statement that the instruction's 'common meaning . . . may continue to [change] to the point it' becomes unconstitutional. [Citation.] A slight modification in view of that decision might be deemed safe, indeed safer than not making it. The high court made clear that the terms 'moral evidence' and 'moral certainty' add nothing to the jury's understanding of reasonable doubt. It thus seems that trial courts might, in the future, safely delete the following phrases in the standard instruction: 'and depending on moral evidence,' and 'to a moral certainty.'

"Making these changes, and no others, would both avoid the perils that have caused appellate courts to caution trial courts against modifying the standard instruction, and satisfy the concerns the high court has expressed regarding that instruction. In light of Penal Code section 1096a, we cannot and do not require courts to change the standard language; rather, we note that it is permissible, and safer, to make the narrow changes suggested herein." (8 Cal.4th at p. 504, fn. omitted, original italics.)

---

[2]The portion of the instruction defining "reasonable doubt" stated: "Reasonable doubt is defined as follows: It's not a mere possible doubt; because everything that relates to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all of the evidence, leaves the mind of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."

The CALJIC committee thereafter revised CALJIC No. 2.90 to incorporate the suggestions of the California Supreme Court.[3]

We consider the opinion of the court in *People* v. *Freeman, supra,* 8 Cal.4th 450 to be dispositive of this issue. The instruction comports with the Supreme Court's determination of what is the appropriate definition of reasonable doubt. It is for the Supreme Court to reconsider such definition if it chooses to do so. Our task is simple: we will apply the law as the Supreme Court has stated it. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

II

*Admission of the Priors*

■ Carroll contends his admission of the alleged prior convictions was not based on a properly informed waiver of his trial rights on those priors. The Attorney General correctly concedes the trial court erred in the summary manner in which the waiver and admissions were taken. The Attorney General argues, however, under the reasoning of *People* v. *Howard* (1992) 1 Cal.4th 1132, 1175 [5 Cal.Rptr.2d 268, 824 P.2d 1315], the error was harmless. The paucity of advice contained in this record compels a conclusion the harmless error doctrine cannot be applied in this case.

The original jury trial was bifurcated with the guilt phase to precede the determination of the truth of the priors. After the first jury deadlocked on the kidnapping charge, a mistrial was declared. The second jury trial was also bifurcated. No action was taken on the priors before the second jury.

At the time of sentencing, the following discussion took place between defense counsel and the trial court:

"[DEFENSE COUNSEL]: Nannette Monson on behalf of Mr. Carroll.

". . . First of all, we had the priors to deal with. I have talked to Mr. Carroll about the prior convictions. He is going to admit that he does have the prior convictions for the [Penal Code section] 211 and the Vehicle Code section] 10851, which I believe are the only prior convictions.

"THE COURT: Sir, you want to waive your right to a trial to [*sic*] those allegations and admit that those allegations are true?

---

[3]The Legislature has since amended section 1096, effective January 1996, to delete reference to "moral evidence" and "moral certainty."

"THE DEFENDANT: Yes."

Carroll was informed prior to the first jury trial of his right to a jury trial on the prior conviction allegations. At that time the court bifurcated the trial on the priors. The first trial, however, ended in a hung jury and a mistrial was declared. The issue of trial on the priors was not revisited until after the completion of the second trial. At that time the very cursory and erroneous questioning of the defendant occurred. The record does not reflect Carroll was ever advised fully or even in a summary fashion as to the nature of the rights he was giving up by his decision to waive trial and admit the priors.

Although the Supreme Court in *People* v. *Howard, supra,* 1 Cal.4th 1132 determined the harmless error doctrine could be used to evaluate trial court errors in obtaining admissions to priors, the court made clear that trial courts remain obliged to fully inform defendants as to their rights as outlined in *In re Yurko* (1974) 10 Cal.3d 857, 861-865 [112 Cal.Rptr. 513, 519 P.2d 561]. The giving of the *Yurko* admonitions assists in establishing a clear record the defendant made a voluntary and informed decision to admit the prior. Where the record, taken as a whole, demonstrates such informed decision, *Howard* permits application of the harmless error doctrine where technical defects have occurred.

This case illustrates the problem which can develop if appellate courts are perhaps too generous in their application of the harmless error doctrine. This is not a record of technical defect; this is a record devoid of any meaningful effort to ensure the defendant was making an informed decision. The trial court's failure to follow the clear and long-established rules laid down by the Supreme Court cannot be cured by any effort on our part to scour the record for scraps of information the defendant might have gleaned on his own in assisting him in making an informed decision.

Candidly, we are amazed at the frequency with which we are presented with records such as this where there is no credible effort by the trial court to comply with *In re Yurko.* The serious/violent felony prior alleged in this case was not a trivial addition to the charges. Admission of the prior deprived the defendant of the opportunity to even be considered for probation, added 10 years to a 5-year term, and limited his ability to earn prison custody credits to only 20 percent of his term. The impact of admitting the prior was equally as important in this case as a plea of guilty to the charge would have been.

The consequences of admissions of priors in cases such as this are too grave and the giving of a proper warning far too easy to justify this court in

searching through the record for something to save the admission. While we regret any added burden to an overloaded court system, the solution is to be found in compliance with well known, easily followed rules, not in strained applications of the harmless error doctrine by the appellate courts.[4]

### DISPOSITION

The admission of the prior allegations is reversed and the matter remanded to the trial court for further proceedings to determine the truth of such allegations. If the allegations are found to be true the case is to be resentenced. The convictions are affirmed.

Nares, J., and Haller, J., concurred.

---

[4] In light of our decision the admission of the proper allegations must be reversed, we find it unnecessary to discuss the three strikes issues raised in this appeal. Those can be considered when and if the prior allegations are found to be true.