[No. D032071. Fourth Dist., Div. One. Nov. 18, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES LYNDE CAMPBELL, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Discussion part II.

**COUNSEL**

Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Laura W. Halgren and Craig S. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HALLER, J.**—A jury found Charles Lynde Campbell (Charles) guilty of inflicting corporal injury resulting in traumatic injury to his wife, Kelly

Campbell (Kelly). (Pen. Code,[2] § 273.5, subd. (a).) Charles then admitted the truth of four prior conviction allegations, including a no-probation prior (§ 1203, subd. (e)(4)), two prison priors (§ 667.5, subd. (b)), and a prior under the three strikes law (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)). The trial court imposed a six-year sentence: the three-year midterm doubled for the strike prior. The court then stayed the two prison priors.

Charles appeals, contending the trial court erred by (1) failing to instruct the jury that section 273.5 is a specific intent crime, (2) excluding evidence that Kelly had previously engaged in prostitution, and (3) failing to properly admonish Charles before he admitted his prior convictions.

We reverse and remand with respect to the last contention, but affirm the judgment in all other respects.

FACTS

Late one night, Kelly returned to her apartment after spending several hours with her upstairs neighbor. The two women had been talking and drinking beer. Upon her return, Kelly went to the bathroom. While she was still there, Charles came in, said he was "tired of this shit," and hit his wife more than three times on her face and head, resulting in abrasions and other injuries. Kelly said that Charles's comment referred to her use of illegal drugs earlier that evening.

Kelly managed to get dressed while Charles stood in their bedroom. She then pushed Charles on the bed and "it was on again." While they wrestled on the bed, Kelly's son, Phillip, arrived. Phillip observed blood on his mother's face. Phillip then called his cousin to come help his mother. When Phillip returned to the bedroom, the fighting had resumed.

When Phillip went to call the police, Charles left. Police officers arrived at the apartment and took photographs of Kelly's battered face. Kelly told the police she did not want her husband arrested. Police officers later found Charles outside a nearby drugstore.

DISCUSSION

I. *General Intent Instruction*

Charles was charged with inflicting injury on his spouse under section 273.5, subdivision (a). Section 273.5 provides that "[a]ny person who willfully inflicts upon his or her spouse . . . corporal injury resulting in a

---

[2]Further statutory references are to the Penal Code unless otherwise specified.

traumatic condition, is guilty of a felony." (§ 273.5, subd. (a).) The trial court instructed the jury that this crime requires general intent. (See CALJIC No. 3.30.)

■ Charles contends the trial court erred in failing to sua sponte instruct the jury that the spousal abuse crime requires specific intent. He maintains that section 273.5 is a specific intent crime because it requires a general intent to use force against the spouse *and* a further *specific intent* that the force will result in a traumatic injury.

A California Court of Appeal recently rejected this identical contention. (*People* v. *Thurston* (1999) 71 Cal.App.4th 1050 [84 Cal.Rptr.2d 221].) *Thurston* reasoned the Legislature's use of the term "willful" in section 273.5, subdivision (a) brings the crime under the general rule that "statutes proscribing willful behavior are general intent crimes." (71 Cal.App.4th at p. 1055; see also *People* v. *Johnson* (1998) 67 Cal.App.4th 67, 72 [78 Cal.Rptr.2d 795].) The court explained that while this rule has exceptions, section 273.5 is not one of them because it "uses no language of intent [other] than the word 'willfully,' specifying only that the act done *result* in a 'traumatic condition.' " (*People* v. *Thurston, supra,* 71 Cal.App.4th at p. 1055.)

*Thurston* further relied on a line of California decisions holding that battery crimes similar to the spousal injury statute are general offense crimes. (*People* v. *Thurston, supra,* 71 Cal.App.4th at p. 1054; see *People* v. *Atkins* (1975) 53 Cal.App.3d 348, 358 [125 Cal.Rptr. 855].) For example, the statute prohibiting the infliction of corporal injury on a child (§ 273d) uses almost identical language to section 273.5, and the courts have "consistently held that this offense is a general intent crime requiring only that the assailant have 'purpose or willingness to commit the act,' *not the specific intent to inflict the traumatic injury."* (*People* v. *Thurston, supra,* 71 Cal.App.4th at p. 1054, italics added; see *People* v. *Sargent* (1999) 19 Cal.4th 1206, 1219-1220 [81 Cal.Rptr.2d 835, 970 P.2d 409]; *People* v. *Atkins, supra,* 53 Cal.App.3d at p. 358.)

We agree with *Thurston*'s well-reasoned decision. A defendant may be found guilty of section 273.5, subdivision (a), if he willfully used force against his spouse, even if he did not specifically intend to cause the traumatic injury. Accordingly, the court did not err in failing to instruct on specific intent.

In his reply brief, Charles urges this court not to follow *Thurston* because the court's analysis would convert other crimes long considered specific

intent crimes, such as perjury (§ 118) and indecent exposure (§ 314) into general intent crimes because their defining statutes use the "willful" language. We do not read *Thurston* so broadly. The court compared the spousal injury statute to similar battery offenses that require a specific bodily harm. The other criminal statutes identified by Charles are different.

Charles's reliance on *People* v. *Rodriguez* (1992) 5 Cal.App.4th 1398 [7 Cal.Rptr.2d 495] is also unavailing. *Rodriguez* assumed section 273.5 was a specific intent crime without discussion or analysis. " ' "[A]n opinion is not authority for a proposition not therein considered. . . ." ' " (*In re Clifford C.* (1997) 15 Cal.4th 1085, 1093-1094, fn. 6 [64 Cal.Rptr.2d 873, 938 P.2d 932].)

## II. *Exclusion of Impeachment Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . .

## III. *Yurko Error*

Before trial, the court granted Charles's motion to bifurcate his trial on the prior conviction allegations. When the court asked defense counsel whether there would "be an admission," counsel responded that he would "follow that up with [Charles]."

After the jury found Charles guilty of spousal injury, the court again asked whether there would "be an admission." Defense counsel responded that Charles was "willing to admit." The prosecutor then read each prior allegation. After each allegation, the court asked Charles whether he admitted or denied the prior. Charles stated that he admitted it. Defense counsel then concurred in the admission. The court did not inform Charles that he was waiving any constitutional rights by making these admissions.

 Charles contends the trial court erred in failing to properly advise him of his rights before he admitted the truth of the four prior conviction allegations: one probation prior (§ 1203, subd. (e)(4)); two prison priors (§ 667.5, subd. (b)); and one "strike" prior (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).

In *In re Yurko* (1974) 10 Cal.3d 857, 861-865 [112 Cal.Rptr. 513, 519 P.2d 561], our Supreme Court held trial courts are constitutionally required to advise defendants who intend to admit prior convictions that they have the right to a jury trial on the prior, the right to confront and cross-examine

*See footnote 1, *ante*, page 305.

witnesses, and the right against self-incrimination (*Boykin/Tahl* rights). (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) The Supreme Court later held that "*Yurko* error involving *Boykin/Tahl* admonitions should be reviewed under the test used to determine the validity of guilty pleas under the federal Constitution. Under that test, a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1175 [5 Cal.Rptr.2d 268, 824 P.2d 1315].)

In this case, *there were no admonitions* with respect to any of the three constitutional rights. All that preceded Charles's admission of the priors was the district attorney's reading the allegation and the court's asking Charles if he wanted to admit it. This record is inadequate to support a voluntary and intelligent waiver of rights on the part of Charles. (See *People* v. *Carroll* (1996) 47 Cal.App.4th 892, 896-898 [54 Cal.Rptr.2d 868]; *People* v. *Johnson* (1993) 15 Cal.App.4th 169, 177-178 [18 Cal.Rptr.2d 650]; *People* v. *Moore* (1992) 8 Cal.App.4th 411, 417 [10 Cal.Rptr.2d 286].)

The Attorney General does not dispute that the trial court failed to advise Charles of his rights when he admitted his prior convictions. The Attorney General instead contends we should infer from Charles's experience and familiarity with the criminal justice system that he intelligently and voluntarily waived his rights. We decline to do so. If this experience were sufficient to constitute a voluntary and intelligent waiver of constitutional rights, courts would rarely be required to give *Boykin/Tahl* admonitions. Under *Howard*, we are not permitted to imply knowledge and a waiver of rights on a silent record. (See *People* v. *Carroll, supra,* 47 Cal.App.4th at pp. 896-897; *People* v. *Johnson, supra,* 15 Cal.App.4th 169, 178.)

In *Carroll*, the trial court obtained the defendant's waiver to his right to a "trial," but failed to advise the defendant regarding his right to a jury trial, right to confront witnesses, and privilege against self-incrimination. (*People* v. *Carroll, supra,* 47 Cal.App.4th 892.) We reversed the defendant's admission because the defendant was never "advised fully or even in a summary fashion as to the nature of the rights he was giving up by his decision to waive trial and admit the priors." (*Id.* at p. 897.) We admonished that "[t]he trial court's failure to follow the clear and long-established rules laid down by the Supreme Court cannot be cured by any effort on our part to scour the record for scraps of information the defendant might have gleaned on his own in assisting him in making an informed decision." (*Ibid.*)

We reverse the admissions. In so doing, we note that six years after reversing the defendant's admissions in *People* v. *Johnson, supra,* 15

Cal.App.4th 169, and three years after reversing the defendant's admissions in *People* v. *Carroll, supra,* 47 Cal.App.4th 892, we continue to be concerned by the frequency by which trial courts fail to provide the necessary admonitions. We are aware of the heavy caseload before the trial courts, but urge the trial courts to comply with the well-known, easily followed rules set forth in *In re Yurko.*

Although not raised by either party, the record discloses an additional error—the court's staying of the prison priors. On remand, assuming the prison priors are proven, the court must either impose the prior prison enhancements or strike them. (See *People* v. *Irwin* (1991) 230 Cal.App.3d 180, 187-193 [281 Cal.Rptr. 195].)

DISPOSITION

The convictions are affirmed. The admission of the prior allegations is reversed and the matter remanded to the trial court to determine the truth of the allegations and for resentencing in accordance with the views expressed above. After resentencing, the trial court is directed to prepare a modified abstract of judgment and forward it to the Department of Corrections.

Benke, Acting P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 16, 2000. Werdegar, J., was of the opinion that the petition should be granted.