Filed 9/11/13  P. v. Johnson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM LOUIS JOHNSON,<br><br>  Defendant and Appellant. | H038575<br>(Santa Clara County<br>Super. Ct. No. C1223015) |

Following approximately a day and a half of testimony, a jury found William Johnson (appellant) guilty of one count of unlawfully taking or driving a vehicle (Veh. Code, § 10851, subd. (a), count one), and one count of possession of burglary tools (Pen. Code, § 466, count two).  Following the reading of the verdict, appellant admitted that prior to the commission of the offenses in this case he had been convicted of a felony, for which he had served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b).

On July 12, 2012, the court sentenced appellant to a blended sentence of three years in prison to be served in the county jail followed by two years of mandatory supervision pursuant to Penal Code section 1170, subdivision (h) on count one,[1] and a 60-

---

[1]    The court sentenced appellant to the aggravated term —four years on count one— plus a consecutive one year term for the prison prior.

day concurrent jail sentence on count two. The court imposed various fines and fees and awarded appellant 385 days of presentence custody credits.

Appellant filed a timely notice of appeal.

On appeal, appellant contends that the trial court abused its discretion in admitting evidence of his prior convictions for vehicle theft. Further, appellant argues that because the trial court failed to advise him of his federal and state constitutional rights before he admitted a prior prison term allegation, we must reverse and remand for further proceedings. Respondent concedes this issue. We agree that the case must be remanded for further proceedings.

*Testimony Adduced at Trial*

*Jesus Flores*

On January 1, 2012, Jesus Flores parked his blue 1990 Toyota Tercel in the area of 16th and Bryant Streets in San Francisco. He was away from his car for approximately 20 to 30 minutes. When he returned to where he had parked the car, sometime between 5:00 and 5:45 p.m., he found that it was missing; Mr. Flores had his keys with him. He did not know appellant and had not given anyone permission to drive his car.

*Officer Higgins*

At around 1:30 a.m. on January 2, 2012, Santa Clara Police Officer Josh Higgins drove into a parking lot on El Camino Real in Santa Clara. Officer Higgins saw appellant sitting in the driver's seat of a blue Toyota Tercel; appellant appeared to be rummaging around the seats. Officer Higgins was in a marked police SUV. After appellant looked up and toward Officer Higgins, appellant got out of the Tercel very quickly, tossed a ring of keys to the ground and began walking away. Appellant's head was down; to the officer he appeared nervous.

Officer Higgins drove slowly toward appellant, stopped his police SUV, and as he was getting out of it asked appellant what he was doing. Appellant told him that he was getting "stuff" out of his car. Appellant's hands were trembling and he would not make

2

eye contact with the officer. Officer Higgins asked appellant if it was his car or was he breaking into it. Appellant replied that he had clothing in the car. When Officer Higgins asked appellant why he had dropped the keys, appellant did not say anything.

Officer Higgins confirmed with dispatch that the Tercel had been stolen; he arrested appellant. Officer Higgins searched appellant and found two metal hook-shaped objects in the pocket of appellant's pants, which the officer recognized as lock-picking devices. He found a similar object and two small screwdrivers in appellant's backpack. Officer Higgins admitted that he did not feel the hood of the car to see whether it warm, which would have indicated that the engine had been running recently.

Officer Higgins was able to locate the keys that appellant had thrown away on the ground by the driver's side door. He described the keys as "shaved"; they bore marks showing that recently they had been filed to smooth out the ridges. According to Officer Higgins, shaved keys allow the keys for one car's ignition to be used to start a different car.

Officer Higgins admitted that the driver's seat in the Tercel was pushed too far back for appellant to drive, but it was in a reclined position in which appellant could have been sleeping.

While transporting appellant in the back of his patrol car to the county jail for booking, Officer Higgins noticed that appellant was slumped over with his eyes closed. The officer asked appellant if he was "okay" and appellant stated that he was not. Officer Higgins asked appellant what was wrong and appellant stated that he had a skin infection that was covering his body. Officer Higgins told appellant that he would be able to get medical treatment at the jail. Appellant responded that he "made this happen." When Officer Higgins asked appellant what he meant, appellant said that he " 'was driving that car from San Francisco trying to get a cop to stop [him].' " Appellant said that he drove the car through some residential streets in San Mateo while honking the horn in the hope that someone would call the police. Appellant told Officer Higgins that he would not last

3

much longer on the streets because he needed food and medical care. He said that he drove from San Francisco to San Jose because he felt that if he was arrested in San Francisco he would not be in jail long enough to get his needs met.

*Officer Ellis*

Officer Ellis responded to the scene after Officer Higgins took appellant into custody. Using one of the shaved keys that appellant had thrown away, Officer Ellis was able to start the Tercel.

*Rita Johnson*

Appellant's ex-wife, Rita Johnson, testified that appellant arrived on a bicycle at her home in San Jose on December 24, 2011. Appellant left on the bicycle on January 1, 2012, between approximately 4:00 to 4:30 p.m. to catch the train back to San Francisco. Mrs. Johnson believed the train ride to San Francisco took between one and two hours.

*Discussion*

*Introduction into Evidence of Appellant's Prior Conviction for Vehicle Theft*
*Background*

In limine, among other things, the prosecution sought to introduce evidence of appellant's three prior convictions for violating Vehicle Code section 10851 (theft or unauthorized use of a vehicle), which occurred in 1989, 2006 and 2011. The court ruled that a 1989 conviction was too remote to be admissible. As to the remaining two convictions, over defense counsel's objection, and after conducting an Evidence Code section 352 analysis, the court ruled that they were admissible on the issue of appellant's intent as to both the vehicle taking charge and the possession of burglary tools charge.

Near the end of the prosecution's case, the prosecutor informed the court that the parties had agreed to a stipulation. The court informed the jury that a stipulation was an agreement by the attorneys regarding the facts. Thereafter, the prosecutor read the following: "The parties stipulate that on July 6th, 2006, William Louis Johnson was convicted of unlawful taking or driving of a vehicle, in violation of California Vehicle

4

Code Section 10851, in San Mateo County case number SC061503A. [¶] It is further stipulated that on October 27, 2011, William Louis Johnson was convicted of unlawful taking or driving of a vehicle, in violation of California Vehicle Code Section 10851, in San Francisco County case No. 11023468."

After confirming that defense counsel so stipulated, the court told the jury the following. "Now, Ladies and Gentlemen, the evidence that you just heard of the prior convictions is offered for a limited purpose only. You may, but are not required to, consider this evidence to show, if it does, that the defendant acted with a specific intent required in one or both of the charged crimes in this case. You cannot consider this evidence as indicating the defendant had a propensity or predisposition to unlawfully take or drive a vehicle or possess burglary tools." The court asked the jurors if any one of them needed the stipulation or the instruction reread. It appears that one juror so indicated. Accordingly, the court reread the limiting instruction. A copy of the stipulation was given to the jury during deliberations after the jury posed a question to the court that read "We would like the specific definition of the 'stipulation.' " However, it does not appear that the court gave the jurors a copy of the accompanying limiting instruction, but told them that they could consider the stipulation "only for the limited purpose explained at the time of the stipulation."

Appellant contends that the trial court abused its discretion in permitting the introduction of evidence of his prior convictions because intent was not a contested issue.[2]

Under Evidence Code section 1101, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to

---

[2] At trial, appellant conceded that he was guilty of count two—possession of burglary tools. Accordingly, this issue is limited to only the unlawfully driving or taking a vehicle charge.

5

prove his or her conduct on a specified occasion."  (Evid. Code, § 1101, subd. (a).)  "Evidence that a defendant committed crimes other than those for which the defendant is then being tried is barred by Evidence Code section 1101 . . . if it is offered to prove the defendant's criminal disposition, but not if it is offered to prove a material disputed issue such as motive or intent.  [Citation.]"  (*People v. Hayes* (1990) 52 Cal.3d 577, 616-617.)  However, to be admissible, "such evidence 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.  [Citations.]' [Citation.]"  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.)  Since evidence of uncharged offenses is highly prejudicial, it must have substantial probative value, and the trial court must carefully analyze the evidence under Evidence Code section 352 to determine if its probative value outweighs its inherent prejudicial effects.  (*Ibid.*)

At the outset, we note that when the trial court overrules a defendant's objections to prior crimes evidence, and the defendant enters into a stipulation regarding the scope of that evidence "to control the form of the evidence, not to concede admissibility," the issues raised by the defendant's objections are preserved for appeal.  (*People v. Bacigalupo* (1991) 1 Cal.4th 103, 138–139, judg. vacated and cause remanded (1992) 506 U.S. 802, reaffd. (1993) 6 Cal.4th 457.)  Accordingly, we turn to whether the court erred in ruling the prior convictions evidence was admissible.

" 'On appeal, the trial court's determination of this issue, being essentially a determination of relevance, is reviewed for abuse of discretion'  [Citation.]"  (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 203.)  Further, the evidence must be viewed in the light most favorable to the verdict.  (*People v. Catlin* (2001) 26 Cal.4th 81, 120.)

"Evidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity.  [Citations.]"  (*People v. Daniels* (1991) 52 Cal.3d 815, 856.)

6

"It is well settled that various degrees of similarity are required to establish identity, common scheme or plan and *intent.* 'When the prosecution seeks to prove the defendant's identity as the perpetrator of the charged offense with evidence he had committed uncharged offenses, the admissibility of evidence of the uncharged offenses turns on proof that the charged and uncharged offenses share sufficient distinctive common features to raise an inference of identity. A lesser degree of similarity is required to establish the existence of a common plan or scheme and still less similarity is required to establish intent. [Citations.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to the charged offense to support the inference that the defendant probably acted with the same intent in each instance. [Citation.]' [Citations.]" (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 240-241.)

"To establish a defendant's guilt of violating Vehicle Code section 10851, subdivision (a), the prosecution is required to prove that the defendant drove or took a vehicle belonging to another person, without the owner's consent, and that the defendant had the *specific intent to permanently or temporarily deprive the owner of title or possession*. [Citation.]" (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574, italics added.)

Appellant argues that the primary cause of disagreement in this case was whether he drove or moved the Tercel; his intent was never in dispute and therefore his intent was not a material fact in issue in this case.

Appellant forgets that his "not guilty plea put in issue all of the elements of the offense[]. [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1243.) This would have been true even if he had conceded, or merely not disputed, the issue of his intent. (*People v. Jones* (2010) 51 Cal.4th 346, 372 (*Jones*).) " '[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense.' (*Estelle v. McGuire* (1991) 502 U.S. 62, 69.)" (*Jones*, *supra*, 51 Cal.4th at p. 372.)

7

As appellant notes, there was no dispute that the car was stolen, and the prosecution did not contend that he had stolen the Tercel from its last known location in San Francisco. However, appellant's intent in driving the Tercel was an issue, even if not " 'significantly' in issue." (*People v. Roldan* (2005) 35 Cal.4th 646, 706-707 (*Roldan*), overruled on a different point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

As the *Roldan* court explained, " ' "We have long recognized 'that if a person acts similarly in similar situations, he probably harbors the same intent in each instance' [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent. The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution." ' [Citation.]" (*Roldan*, *supra*, 35 Cal.4th at p. 706.)

Lacking direct evidence of appellant's mental state, evidence of the two prior Vehicle Code section 10851 convictions was relevant to demonstrate appellant's intent in driving the Tercel. That is, the two incidents were sufficiently similar to support the inference appellant probably harbored the same intent in each instance. (*People v. Ewoldt, supra,* 7 Cal.4th at p. 402; *People v. Lindberg* (2008) 45 Cal.4th 1, 23; *People v. Kelly* (2007) 42 Cal.4th 763, 783.) At least one of the prior incidents involved the use of shaved keys. Although we do not know the details of the other, given that the least amount of similarity is required to show intent, just the fact that appellant had in the past unlawfully taken or driven a vehicle, was sufficiently similar to the Tercel incident to warrant introduction on the issue of intent. (*People v. Ewoldt, supra,* 7 Cal.4th at p. 402.)

Appellant argues that although the prosecutor was careful to point out to the jurors that they could use the prior convictions only for the purpose of showing his intent in driving the Tercel, the prosecutor went on to state, "another important factor is the fact . . . that defendant has been convicted of this crime in the past, that in the past, the defendant has possessed somebody else's car, has driven it intending to deprive them [of]

8

ownership of that car." Appellant argues that the prosecution's reference to him having "driven" the cars associated with his prior convictions inappropriately gave the jury license to use the priors to determine that he drove the Tercel in this case. We are not persuaded that the jury would have done any such thing. Our review of the record of the prosecutor's argument shows that the prosecutor used the prior crimes evidence solely to establish appellant's intent. Furthermore, the jury was instructed twice by the court that they could consider the prior crimes evidence only to show that appellant "acted with the specific intent required for one or both of the charged crimes" and not as evidence indicating that appellant "had a propensity or predisposition to unlawfully take or drive a vehicle," which is what they would have had to have done to use the evidence as appellant suggests. Moreover, the court instructed the jury, "[d]uring trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other." We presume the jury understood and followed the court's instructions. (*People v. Lindberg*, *supra*, 45 Cal.4th at p. 26.)

Finally, assuming for the sake of argument that the trial court abused its discretion in admitting evidence of appellant's prior crimes, reversal is not required. Even if the other crimes evidence had been excluded, appellant was seated in a stolen car; he possessed tools used to break into cars and a shaved key that was able to start the Tercel. Appellant's statements to Officer Higgins that he "made this happen" and that he " 'was driving *that* car from San Francisco trying to get a cop to stop [him]' " were particularly damaging to appellant. In short, there was compelling evidence that appellant unlawfully drove or took the Tercel. Accordingly, a result more favorable to appellant was not reasonably probable absent admission of the prior crimes evidence. (*People v. Welch* (1999) 20 Cal.4th 701, 750; *People v. Watson* (1956) 46 Cal.2d 818, 836.) For the same reasons, any error was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Cole* (2004) 33 Cal.4th 1158, 1195.)

Appellant asserts that prejudice was demonstrated because when the court reread the stipulation to the jury during deliberations, but did not reread its limiting instruction, the court placed the admission of the priors squarely in front of the jury with a vague instruction to remember its previous limiting instruction; and since the jury returned a guilty verdict 15 minutes later, without a thorough explanation of the use of the priors, there is a reasonable probability that the jury convicted based on the priors. Again, we are not persuaded. The trial court reminded the jurors of the limited use of the evidence of the priors and we have no reason to presume that the jurors were incapable of remembering that limiting instruction and following the instruction they had been given twice by the court. The fact that on the jury request form for the "specific definition of the 'stipulation' " the words "Instructions on how" were crossed out indicates to this court that the jurors were quite aware of the instruction on how to use the evidence. Overwhelming evidence of guilt is a more likely explanation for the jury returning a guilty verdict after being reread the stipulation regarding appellant's prior convictions.[3] The assertion by appellant that the jury "might have been confused about the proper application of the prior convictions," might not have remembered the limiting instruction details or may have disagreed amongst themselves about its directives is pure speculation. "It is ordinarily presumed that jurors are intelligent persons capable of understanding and correlating all jury instructions that are given. [Citations.]" (*People v. Phillips* (1985) 41 Cal.3d 29, 58.) Appellant's showing here has left that presumption un-rebutted.

---

[3]     An equally plausible explanation is the jury was convinced that appellant took or drove the car, but was unsure if appellant had the specific intent to permanently or temporarily deprive the owner of possession of the Tercel. Any doubts about appellant's intent would have been dispelled once the stipulation on the other crimes evidence was read again and the jury applied the instruction on how to use this evidence.

*Appellant's Prior Prison Term Admission*

Appellant contends that we must reverse this case and remand to the trial court because the court failed to advise him of his federal and state constitutional rights, and get his waiver of those rights, in connection with his admission that he had a prior conviction for which he had served a prior prison term. Respondent concedes this issue and points out that the record is silent as to whether appellant's admission was voluntary and knowing.

*Background*

Immediately after setting the date for a sentencing hearing in this case, and informing appellant that the probation department would contact him, the court paused to state the following. "Actually, you know what? We have to do the -- we have to either do a court trial on the prison prior, unless he wants to admit it." Defense counsel asked for "one moment" and conferred with appellant. Thereafter, defense counsel stated, "Your Honor, he's indicated a willingness to admit the prison prior at this time." The court addressed appellant directly and stated, "All right. Mr. Johnson, it is alleged in the information within the meaning of Penal Code Section 667.5(b) that prior to the commission of the offenses charged in the Information, you were convicted of a felony, vehicle theft in San Mateo docket SC061503A, and for that offense, you served a prison term, and that since serving that term did not remain free of both prison custody and a felony conviction for five years. [¶] Do you admit or deny the allegation?" Appellant replied, "Admit."

Before a trial court accepts a defendant's admission of a prior conviction allegation, the court must identify for the defendant the three rights that the defendant is waiving (i.e., to a jury trial, to remain silent, and to confront witnesses), and must obtain waivers of these rights from the defendant. (*People v. Mosby* (2004) 33 Cal.4th 353, 359-360 (*Mosby*).) If an express waiver of the rights is not secured from the defendant,

11

reversal is required unless the record as a whole shows the admission was voluntary and intelligent under the totality of circumstances.  (*Id*. at pp. 360–361.)[4]  The question is whether the defendant's admission was intelligent and voluntary "because it was given with an understanding of the rights waived."  (*Id*. at p. 361; see also *People v. Hinton* (2006) 37 Cal.4th 839, 875, fn. 12.)

---

[4]     Before *People v. Howard* (1992) 1 Cal.4th 1132 (*Howard*), California law viewed the failure to advise a defendant of his constitutional rights or secure his waiver of them prior to accepting a guilty plea or admission of a prior conviction—known as *Boykin-Tahl* (plea) or *Yurko* (prior conviction admission) error—as automatically reversible, regardless of prejudice.  In *Howard,* however, our Supreme Court determined that "*Yurko* error involving *Boykin/Tahl* admonitions should be reviewed under the test used to determine the validity of guilty pleas under the federal Constitution.  Under that test, a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances."  (*Howard, supra,* 1 Cal.4th at p. 1175.)  Thus, although the trial court in *Howard* did not admonish the defendant concerning his privilege against self-incrimination, the Supreme Court concluded that the defendant's admission of the prior conviction was voluntary and intelligent from a review of the totality of the circumstances.  (*Id.* at p. 1180.)  Subsequent to *Howard,* however, some courts of appeal questioned the wisdom of applying a harmless error test in this context and declined to review the record in the manner directed by the *Howard* court.  (*People v. Howard* (1994) 25 Cal.App.4th 1660; *People v. Garcia* (1996) 45 Cal.App.4th 1242; *People v. Carroll* (1996) 47 Cal.App.4th 892; *People v. Van Buren* (2001) 93 Cal.App.4th 875.)  In *Mosby, supra,* 33 Cal.4th 353, our Supreme Court reiterated its commitment to application of a harmless error analysis of *Boykin-Tahl-Yurko* error and elaborated that "[i]n replacing the old rule, the focus was shifted from whether the defendant received express rights advisements, and expressly waived them, to whether the defendant's admission was intelligent and voluntary because it was given with an understanding of the rights waived.  After our *Howard* decision, an appellate court must go beyond the courtroom colloquy to assess a claim of *Yurko* error.  [Citation.]  Now, if the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*Mosby,* at p. 361.)  However, with respect to "[t]ruly silent-record cases . . . that show no express advisement and waiver of the *Boykin-Tahl* rights before a defendant's admission of a prior conviction," the court stated:  "In such cases, in which the defendant was not advised of the right to have a trial on an alleged prior conviction, we cannot infer that in admitting the prior the defendant has knowingly and intelligently waived that right as well as the associated rights to silence and confrontation of witnesses." (*Id*. at pp. 361-362.)

In *Mosby*, the court found that a defendant's admission of his priors was intelligent and voluntary under the totality of circumstances, notwithstanding the trial court's failure to advise and obtain a waiver of the rights to silence and confrontation of witnesses. (*Mosby*, *supra*, 33 Cal.4th at pp. 356, 360, 364–365.) The lynchpin of *Mosby's* conclusion was that the defendant was expressly advised about, and had expressly waived, his right to a jury or court trial on the priors. (*Id*. at p. 364.) The court in *Mosby* reasoned that it was apparent that the defendant knew about and intended to waive the two rights attendant to trial (i.e., silence and witness confrontation) because he had just participated in a trial on the substantive offenses where those very same rights were exercised. (*Id.* at pp. 364–365.) *Mosby* distinguished cases where there was absolutely no advisement and waiver as to the jury or court trial right, or where the trial court's reference to the trial right was fleeting and without response from the defendant so that the circumstances in effect equated to a complete lack of advisement and waiver. (*Id*. at pp. 361–362.)

In the case before the *Mosby* court, immediately after the jury returned a guilty verdict, the defendant was advised that he had a right to a jury trial on the prior conviction. He waived that right and admitted the truth of the allegation. The court held that the totality of the circumstances supported a finding that "defendant voluntarily and intelligently admitted his prior conviction despite being advised of and having waived only his right to a jury trial." (*Mosby, supra,* 33 Cal.4th at p. 365.) Important considerations in *Mosby* included the fact that defendant "had *just* undergone a jury trial" at which he did not testify but his codefendant did, indicating that he understood he had a right to remain silent at trial, thereby "forcing the prosecution to prove he had sold cocaine." (*Id.* at p. 364.) In addition, at the trial that had just concluded, his attorney had confronted witnesses, indicating that defendant "would have understood that at a trial he had the right to confrontation." (*Ibid.*) Finally, the court also considered defendant's prior experience with the criminal justice system "relevant to a recidivist's ' "knowledge

13

and sophistication regarding his [legal] rights." ' "  (*Id.* at p. 365.)  In a footnote, the *Mosby* court disapproved *People v. Van Buren, supra,* 93 Cal.App.4th 875, *People v. Carroll, supra* 47 Cal.App.4th 892, *People v. Garcia, supra,* 45 Cal.App.4th 1242, *People v. Torres* (1996) 43 Cal.App.4th 1073, and *People v. Howard, supra,* 25 Cal.App.4th 1660, to the extent they were inconsistent with its holding in *Mosby.* (*Mosby, supra,* 33 Cal.4th at p. 365, fn. 3.)  All were cases that the *Mosby* court had earlier in the opinion characterized as showing incomplete advisements and waivers rather than being "[t]ruly silent-record cases."  (*Id.* at p. 361.)

Here the trial court's fleeting statement, "we have to either do a court trial on the prison prior, unless he wants to admit it" in no way advised appellant that he had a right to a *jury trial* on the prior prison term allegation, to confront witnesses against him and his privilege against self-incrimination.[5]  In this case a very experienced trial court made no meaningful effort to properly inform appellant of his rights before appellant admitted the prior prison term allegation.  As the court in *People v. Howard*, *supra*, 1 Cal.4th at pages 1178-1179 explained, "explicit admonitions and waivers still serve the purpose that originally led [the Supreme Court] to require them," and "are the only realistic means of assuring that the judge leaves a record adequate for review."

In this case, we are compelled to vacate the sentence and remand the case for yet another hearing.

---

[5]  Even though appellant had just finished a jury trial during which his attorney had confronted the witnesses against him, and he had exercised his right to remain silent, a passing remark about a "court trial" in no way informed appellant that he had a right to a jury trial on the prior prison term allegation.  Further, although it appears from the probation officer's report that appellant has an extensive criminal history, it is impossible to tell whether any of appellant's prior convictions stemmed from pleas or were the result of jury trials.  Nor are we able to tell whether or not appellant has ever admitted a prior prison term allegation in the past.

*Disposition*

The judgment is reversed. The matter is remanded to the trial court for a new adjudication of the prior prison term allegation under Penal Code section 667.5, subdivision (b), either by admission or trial, and for resentencing thereafter.


_____
ELIA, J.


WE CONCUR:



_____
RUSHING, P. J.



_____
PREMO, J.

15