Filed 10/16/14  P. v. Sandoval CA4/1

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR SANDOVAL,<br><br>     Defendant and Appellant. | D064331<br><br>(Super. Ct. No. SCE328674)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 30, 2014, be modified as follows:

On page 9, at the end of the first full paragraph, after the word "issue" add the following:

We reject Sandoval's claim that the court's response had the effect of removing the intent element from the jury's consideration.  The correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.  (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248.)  Here, CALCRIM No. 1600 correctly informed the jury of the act and intent elements of robbery and that the act — taking using fear — must have been motivated by the required intent to steal.!(1CT 39)!  CALCRIM No. 1600 together with CALCRIM No. 251 instructed that the People had to prove beyond a reasonable doubt the union of Sandoval's act (taking using fear) and his wrongful intent (to steal, i.e., to permanently deprive the owner of the property).!(1CT 37)!

The jury asked whether Sandoval used fear if his act of reaching under his shirt was entirely unintentional.!(1CT 77)!  The instructions to the jury did not address this specific question and the court's response correctly informed the jury that specific intent to cause fear is not required. (*Anderson*, *supra*, 51 Cal.4th at p. 995.)  The court's response then addressed the jury's concern that Sandoval's action of reaching under his shirt might have been unintentional by informing it that Sandoval needed to have knowingly acted in a manner that caused the victim to be fearful, i.e., that his act of reaching under his shirt was not unintentional.!(1CT 78)!  It is not reasonably likely the jury ignored these instructions and construed the court's response as removing the required intent to steal.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

McINTYRE, Acting P. J.

Filed 9/30/14 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064331 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE328674) |
| SALVADOR SANDOVAL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Allan J. Preckel, Judge. (Retired judge of the San Diego Sup. Ct.) Affirmed in part; reversed in part.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Salvador Sandoval guilty of robbing Angel Beltran. Sandoval later admitted two prison prior allegations. The trial court suspended imposition of sentence and placed Sandoval on formal probation for a period of five years. As a condition of probation, he was ordered to serve 365 days in county jail with credit for time served. Sandoval appeals, contending the trial court erred when it (1) refused his request to instruct the jury that the victim's fear had to be objectively reasonable and (2) omitted the element of intent from the charge when it replied to a jury question. We reject these assertions.

Sandoval also argues that his admission of the two prison prior convictions should be reversed because he was not advised of and did not expressly waive his right to a jury trial. We agree that Sandoval never expressly waived his right to a jury trial before admitting the truth of his prison prior conviction allegations. Accordingly, we reverse as to those and remand for a new trial on the allegations.

FACTUAL AND PROCEDURAL BACKGROUND

On an afternoon in March 2013, Angel Beltran was at his home in Spring Valley, California with his father-in-law Guillermo Quiroz and other family members. Beltran's truck was parked in front of the home, about 50 to 60 feet away. In the bed of the truck was a small trailer that attaches to the rear of a bicycle to tow children or pets. Beltran saw Sandoval at the corner of the driveway next to the trailer which had been removed from the truck. Beltran yelled at Sandoval to bring the trailer back. Quiroz came outside to see why Beltran was yelling. Beltran's mother-in-law and eighteen-month-old son were also outside.

2

Beltran told Sandoval to return the trailer or he would call the police. At this point, Quiroz joined Beltran and the men slowly approached Sandoval in an attempt to intimidate him into leaving the trailer. Sandoval made a reaching motion under his shirt with his left hand, as if reaching to pull something out of his waistband. Beltran cautioned Quiroz to stop because he was scared that Sandoval was armed with a knife or gun and could shoot him or his family. The men backed away from Sandoval because they did not want to turn their backs to him. Sandoval kept his hand under his shirt until Beltran and Quiroz started to back up.

Beltran called the police. In the meantime, Sandoval walked away with the trailer. Beltran and Quiroz followed, at a distance of about 100 feet, when Sandoval turned and shook his fist at the men. The men returned to their home after a police dispatcher told Beltran to stop following the suspect. Beltran and Quiroz later drove to a nearby store. Beltran saw Sandoval coming out of the store and saw the trailer nearby. Beltran followed Sandoval in his truck until a sheriff's deputy arrived. Sandoval had two knives clipped to the right side of his belt, under his shirt.

## DISCUSSION

### I. *Alleged Instructional Error*

A. Background

Before trial, defense counsel told the court she had a pinpoint instruction requiring that the victim's fear be objectively reasonable. During the postevidence conference on jury instructions, the trial court proposed modifying CALCRIM No.

3

1600, the standard jury instruction on robbery, to respond to defense counsel's request by including the words "by his conduct." The modified portions of the instruction would read (1) " 'The defendant, by his conduct, used fear against the owner to take and/or retain possession of the property' " and (2) " 'When the defendant, by his conduct, used fear to take and/or retain the property, he intended to deprive the owner of it permanently.' " Defense counsel did not object to the proposed changes, but reiterated her request for a pinpoint instruction. The trial court rejected counsel's argument, stating California law requires that a victim of robbery have actual fear, but there is no case law or statute requiring the victim's fear to be objectively reasonable.

During closing arguments, the parties emphasized that the prosecution had to prove Sandoval caused fear by his conduct, with defense counsel suggesting that Sandoval reached for his waistband to adjust it. The jury was later instructed with the modified version of CALCRIM No. 1600 and on the lesser offense of petty theft. The jury was also instructed that robbery required the union of act and wrongful intent and proof that the defendant intentionally committed the prohibited act with the specific intent defined in the robbery or petty theft instructions. (CALCRIM No. 251.)

B. Analysis

Sandoval first contends that, based on federal and out-of-state authority and public policy, reasonableness of fear is an element of the offense of robbery. In *People v. Morehead* (2011) 191 Cal.App.4th 765 (*Morehead*), another panel from

4

this court rejected this contention concluding that CALCRIM No. 1600 does not "omit or withdraw an element from the jury's determination." (*Morehead*, at p. 774.)  The *Morehead* court noted that "because the term 'fear' as used in the definition of robbery has no technical meaning peculiar to the law and is presumed to be within the understanding of the jurors, . . . the court [does] not have a sua sponte duty to amplify the robbery instructions by telling the jury that each victim's fear had to be both actual and reasonable." (*Ibid.*)  Although Sandoval concedes the *Morehead* court rejected his contention, he claims we should revisit the issue because the California Supreme Court has not yet addressed this issue.  Although our high court has not yet addressed whether reasonableness of fear is an element of the offense of robbery, it has concluded that fear "may be proved with circumstantial evidence" and "may be inferred from the circumstances in which a crime is committed or property is taken.  [Citations.]" (*People v. Holt* (1997) 15 Cal.4th 619, 690.)

A number of courts have concluded "the fear necessary for robbery is subjective in nature, requiring proof 'that the victim was in fact afraid, and that such fear allowed the crime to be accomplished.'" (*People v. Anderson* (2007) 152 Cal.App.4th 919, 946; see also *People v. Cuevas* (2001) 89 Cal.App.4th 689, 698 [Fear "need not be testified to explicitly by the victim."]; *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709-1710, fn. 2 [same].)  As one legal treatise explained, "[I]f the circumstances are such that a reasonable person would not be scared, a jury might properly infer that the victim, in spite of his testimony to the contrary, was

5

not in fact scared . . . .  But if the victim is actually frightened by the defendant into parting with his property, the defendant's crime, on principle, is robbery, even though an ordinary person, with more fortitude than the victim, would not have been thus frightened."  (3 LaFave, Substantive Criminal Law (2d ed. 2003) § 20.3(d), pp. 188-189.)  Sandoval's citation to non-California authority does not convince us to depart from our conclusion in *Morehead* that CALCRIM No. 1600 correctly sets forth the necessary elements of robbery.  (*Morehead*, *supra*, 191 Cal.App.4th at p. 774.)

Sandoval next contends the trial court violated state law by refusing his request to instruct the jury that the victim's fear must be reasonable and the trial court's refusal to so instruct was prejudicial as a reasonable probability existed the outcome would have been different if the jury had been correctly instructed.  As a preliminary matter, we reject the Attorney General's contention that Sandoval forfeited this issue by failing to provide a proposed pinpoint instruction to the trial court.  Defense counsel twice notified the court of her request for pinpoint instructions and these requests sufficiently preserved the issue for our review.  We also note that Sandoval does not contest the sufficiency of the evidence establishing his use of force and fear to commit the robbery.  Accordingly, we need not discuss this evidence and instead note that our review of the record shows ample evidence existed showing Sandoval's conduct placed Beltran in fear.

"Pinpoint instructions 'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case.'"  (*People v. Wilkins* (2013) 56 Cal.4th

6

333, 348-349.) Such instructions are required to be given upon request when there is evidence supportive of the theory. (*Id.* at p. 349.) A trial court errs when it refuses to give such an instruction. (*People v. Hughes* (2002) 27 Cal.4th 287, 362.) A trial court, however, "may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation]." (*People v. Moon* (2005) 37 Cal.4th 1, 30.)

As discussed above, Sandoval cited no California authority to support his contention that the element of fear for robbery includes a component of objective reasonableness. Thus, the trial court properly rejected Sandoval's request the jury be instructed that the victim's fear needed to be objectively reasonable as it did not correctly state the law. Although Sandoval cites *Morehead* for the proposition that a trial court should instruct regarding the reasonableness of a robbery victim's fear if so requested, we do not read *Morehead* so broadly. The *Morehead* court simply recognized the well established principle that a party is required to request additional or clarifying instructions or forfeit the issue. (*Morehead*, *supra*, 191 Cal.App.4th at p. 774; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 122 [failure to request clarifying instruction forfeits issue].)

Assuming for the sake of argument the trial court erroneously refused to give the pinpoint instruction, any error was harmless because it is not reasonably probable that had the jury been so instructed, it would have come to any different conclusion in this case. Here, Sandoval ignored Beltran's yelling and threat to call

7

the police if he did not return the trailer.  Instead, as Quiroz and Beltran slowly approached, Sandoval made a reaching motion under his shirt with his left hand, as if reaching to pull something out of his waistband.  Sandoval kept his hand under his shirt until Beltran and Quiroz started to back up.  It is common knowledge that criminals often store weapons in their waistbands and, in fact, Sandoval had two knives hidden on his waistband.  Thus, the assumed element of objectively reasonable fear was satisfied.

## II. *Alleged Error in responding to Jury Question*

A.  Background

During deliberations, the jury submitted a note asking three questions: (1) the definition of "'using fear;'" (2) if the act of reaching under his shirt was entirely unintentional, yet caused the victim to feel fear, does this satisfy the words "'used fear'" in number 4 of the elements of robbery; and (3) does "'using'" fear mean the intentional "'use of fear.'"  The court responded to the jury as follows: "The conduct of the defendant - by word and/or act - must have been such as to cause the victim to be actually fearful.  [¶]  The defendant need not be proven to have specifically intended his conduct to cause the victim fear.  But it does need to be proven that the defendant *knowingly* acted in a manner that caused the victim to be fearful."  The jury returned its verdict soon after receiving this response.

B.  Analysis

Penal Code "[s]ection 1138 imposes upon the court a duty to provide the jury with information the jury desires on points of law."  (*People v. Smithey* (1999) 20

8

Cal.4th 936, 985.) Sandoval contends the trial court incorrectly responded to the jury's question because it allowed the jurors to find him guilty even if they found he acted unintentionally. We reject Sandoval's argument because the trial court gave a legally correct response.

In *People v. Anderson* (2011) 51 Cal.4th 989 (*Anderson*), our high court clarified that robbery does not contain any "heretofore unidentified element of intent to cause the victim to experience force or fear." (*Id.* at p. 995.) "It is robbery if the defendant committed a forcible act against the victim motivated by the intent to steal, even if the defendant did not also intend for the victim to experience force or fear." (*Id.* at pp. 991-992.) Sadly, neither party knew of the existence of *Anderson*, which decides this issue.

III. *Improper Advisement regarding Trial on Prison Prior Allegations*

A. Background

After the jury rendered its verdict and before it was excused, the court called counsel to sidebar and asked if Sandoval would either admit his prior convictions or submit to a bench trial. After defense counsel answered affirmatively, the trial court dismissed the jury. On the day set for sentencing, after defense counsel informed the court that Sandoval would be admitting his prison prior allegations, the court advised Sandoval that he had a right to a court trial on those allegations and "the same constitutional rights associated with a trial process that you otherwise enjoyed upon the original trial of the robbery charge in this case." Sandoval gave up his right to trial and later admitted the truth of the alleged convictions.

9

B. Analysis

Sandoval contends his admissions should be reversed because he was never advised of and did not waive his right to a jury trial on the prison prior allegations. The Attorney General concedes that Sandoval received an incomplete advisal of his rights, but argues that the totality of the circumstances show his admission of his prior convictions was voluntary and intelligent under *People v. Mosby* (2004) 33 Cal.4th 353, 361 (*Mosby*).  We agree with Sandoval.

Before accepting a defendant's admission to a prior prison term allegation, the trial court should "advise the defendant and obtain waivers of (1) the right to a trial to determine the fact of the prior conviction, (2) the right to remain silent, and (3) the right to confront adverse witnesses.  (*In re Yurko* (1974) 10 Cal.3d 857, 863 [(*Yurko*)].)"  (*Mosby*, *supra*, 33 Cal.4th at p. 356.)  Additionally, the trial court should also tell the defendant "the effect which a determination of habitual criminality will have on the punishment and other sanctions to be imposed upon the accused's conviction of the substantive crime charged."  (*Yurko*, at p. 864.)  If an express waiver of the rights is not secured from the defendant, reversal is required unless the record as a whole shows the admission was voluntary and intelligent under the totality of circumstances. (*Mosby*, at pp. 360-361.)  When the admonitions required by *Yurko* are not provided, we may nonetheless find a plea valid "if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances."  (*People v. Howard* (1992) 1 Cal.4th 1132, 1175.)  A silent record, however, does not permit us to imply knowledge and a voluntary

10

waiver.  (*People v. Campbell* (1999) 76 Cal.App.4th 305, 310; *People v. Carroll* (1996) 47 Cal.App.4th 892, 896-898; *People v. Johnson* (1993) 15 Cal.App.4th 169, 177-178.)  Because the record is silent, we cannot conclude that Sandoval intelligently and knowingly waived his right to a jury trial on his prison prior conviction allegations.  (*People v. Howard*, at p. 1175.)

We reject the Attorney General's contention that we should infer Sandoval intelligently and voluntarily waived his rights merely because he had experience and familiarity with the criminal justice system.  In *Campbell*, another panel from this court rejected this contention, noting that if experience with the criminal justice system were sufficient to constitute a voluntary and intelligent waiver of constitutional rights, courts would rarely be required to give such admonitions. (*People v. Campbell*, *supra*, 76 Cal.App.4th at p. 310.)  In *Mosby*, the court agreed with this reasoning when it cited *Campbell* with approval in support of the principle that a court cannot imply a knowing waiver on a silent record.  (*Mosby*, *supra*, 33 Cal.4th at p. 362.)  Because Sandoval did not voluntarily and intelligently admit to the prior prison conviction allegations, the trial court's true findings on these allegations and the imposed sentence enhancements under Penal Code section 667.5, subdivision (b) must be reversed and the matter remanded for a new adjudication of these allegations either by admission or trial, and for resentencing. (*People v. Moore* (1992) 8 Cal.App.4th 411, 422 [remedy for error is reversal as to the prior conviction enhancements and remand for a new trial on that issue only].)

11

DISPOSITION

The convictions are affirmed. The admission of the prior prison conviction allegations is reversed and the matter remanded to the trial court for a new adjudication of these allegations under Penal Code section 667.5, subdivision (b), either by admission or trial, and for resentencing thereafter.

McINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.

12