[No. E019590. Fourth Dist., Div. Two. Mar. 27, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
AARON C. COCHRAN, Defendant and Appellant.

**Counsel**

Corrine S. Shulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Niki Cox Shaffer and Frederick B. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**HOLLENHORST, Acting P. J.**—Defendant was convicted by a jury of assault resulting in the death of a child under the age of eight in violation of Penal Code section 273ab.[1] On appeal, defendant claims that the defendant was deprived of a fair trial because two jurors belatedly disclosed that they knew members of the victim's family, that defendant did not have "care and custody" of the victim at the time of the offense and therefore did not fall within the purview of the statute, and that the court refused to instruct the

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

jury under the prior version of CALJIC No. 2.90 which included the phrase "moral certainty." We affirm.

### FACTS

Defendant and the victim's mother met in 1994 shortly after the birth of Shayla, the victim. After meeting in December, by March 1995, at defendant's request, mother and the baby moved in with defendant at the home of his grandparents. All three individuals, mother, defendant and the baby slept together in the same room. The victim's mother described defendant as the child's surrogate father in that he watched and fed the baby, gave her baths and helped put her down for naps.

The baby was taken to a hospital emergency room for an ear infection on July 4, 1995. She was given prescription medication which resolved her symptoms. However, the symptoms returned on July 6 as the child cried, would not hold food down and was whining. The baby was taken to the doctor again on July 7th at 1 p.m. After they returned from the doctor's office, the mother played with the baby and fed her. Around 5 p.m. defendant volunteered to put the baby down for a nap after she became fussy. Defendant returned from the bedroom after a short while and said the child was sleeping. When mother later attempted to check on the baby, defendant volunteered to check on her and reported that she was still asleep.

Mother subsequently checked on the baby who was found to be neatly tucked into the bed. The baby was gray in color and had no pulse. Paramedics were summoned and resuscitation efforts failed. A postmortem examination revealed that the child had fresh bruises to her forehead and abdomen, the abdominal bruising being the likely cause of the vomiting. An inner lip injury was discovered which was likely the result of a hand being placed over her mouth. Internal examination of the head of the child revealed a brain injury which was described as moving head injuries caused by acceleration/deceleration type of impact. The injuries could have been caused by a child's head hitting a wall. Later, mother found an indentation in the wall adjacent to the bed.

During subsequent questioning of defendant, he initially denied having anything to do with the death of the child. He stated that he put the child to bed and later found her dead. In a subsequent interview, defendant admitted throwing her on the bed the day before her death resulting in her hitting her head. On the day of her death defendant stated when he reentered the room to check on her he found her on the floor. This angered him and he squeezed her and threw her on the bed with such force that she hit the wall on the other side of the bed and did not make any more noise.

## Discussion

1. *Did the Failure of the Court to Excuse Two Jurors Who Subsequent to Being Sworn Indicated That They Knew Members of the Victim's Family Deprive Defendant of a Fair Trial?*

 Defendant contends that he was deprived of a fair trial because two jurors disclosed after the trial began that they knew relatives of the victim. The record is not clear as to when the jurors recognized the fact that they knew family members of the victim, however, as to each juror, the court's individual questioning of the jurors clearly indicates a lack of prejudice. As to juror No. 9, she stated that her acquaintance with the aunt of the mother of the child was very minimal, that they had daughters who went to school together but that she felt she could be fair and impartial.

Juror No. 12 disclosed that she recognized a woman in the courtroom who turned out to be the grandmother or great grandmother of the victim. The juror stated that she only recognized the woman and really did not know her. She further indicated that she could be fair and impartial.

Defendant relies on *People* v. *Diaz* (1984) 152 Cal.App.3d 926, 932-937 [200 Cal.Rptr. 77], for the proposition that defendant was entitled to have these two jurors removed at his counsel's request. We disagree for two reasons. First, there is a presumption by defendant that there was some sort of actual misconduct on the part of the two jurors involved in this matter through concealment of this information. It is clear at least as to juror No. 12 that she never made any connection between the grandmother and this case until she later saw the grandmother in the courthouse. As to juror No. 9, the record is not clear when she realized the connection between the aunt and this case. We also note that the nature of the nondisclosed issue in *Diaz*, a prior rape on the part of the juror, is much more serious and more likely to lead to prejudice than a fleeting acquaintance with a relative. In *In re Hitchings* (1993) 6 Cal.4th 97, 118-119 [24 Cal.Rptr.2d 74, 860 P.2d 466], the court discussed the standard of review for nondisclosure of information on voir dire: "As a general rule, juror misconduct 'raises a presumption of prejudice that may be rebutted by proof that no prejudice actually resulted.' [Citations.] Thus, '[a] judgment adverse to a defendant in a criminal case must be reversed or vacated "whenever . . . the court finds a substantial likelihood that the vote of one or more jurors was influenced by exposure to prejudicial matter relating to the defendant or to the case itself that was not part of the trial record on which the case was submitted to the jury." (2 ABA Standards for Criminal Justice, std. 8-3.7 (2d ed. 1980) p. 8.57; . . .) [¶] "The ultimate issue of influence on the juror is resolved by reference to the

substantial likelihood test, an objective standard. In effect, the court must examine the extrajudicial material and then judge whether it is inherently likely to have influenced the juror." (2 ABA Standards for Criminal Justice, *supra*, std. 8-3.7, Commentary, p. 8.58.)' [Citations.]

"The rule applies to both types of misconduct present in this case. Thus, juror misconduct involving the concealment of material information on voir dire raises the presumption of prejudice (*Wiley* v. *Southern Pacific Transportation Co.* (1990) 220 Cal.App.3d 177, 189 . . . [applying the presumption of prejudice standard in case involving concealment on voir dire]; [*People* v.] *Blackwell* [(1987)] 191 Cal.App.3d 925, 929 [236 Cal.Rptr. 803] [same]; [*People* v.] *Diaz* [(1984)] 152 Cal.App.3d 926, 934-935 [200 Cal.Rptr. 77] [same]), as does the misconduct of discussing the case with nonjurors while the case is pending (*People* v. *Pierce* [(1979)] 24 Cal.3d [199,] 207 [155 Cal.Rptr. 657, 595 P.2d 91]; see *People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156 . . . ['It is well settled that a presumption of prejudice arises from *any* juror misconduct.' (Italics added.)]).

"This presumption of prejudice ' "may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party [resulting from the misconduct]. . . ." ' (*People* v. *Miranda* (1987) 44 Cal.3d 57, 117 . . . , quoting *Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388, 417 . . . ; *Wiley* v. *Southern Pacific Transportation Co.*, *supra*, 220 Cal.App.3d at p. 189.)"

Applying this standard of review, we find that the information which was not disclosed was such that there was no actual probability of harm to defendant. The relationship between the jurors and victim's family was extremely distant and we, unlike the court in *Diaz*, take the statements of the jurors that they could set aside this knowledge of family and judge the case fairly and impartially at face value. We decline to evaluate and subsequently dismiss such statements by jurors as "self-serving" as did our colleagues in *Diaz*. Here, the evidence of guilt was extremely strong and we conclude that the presumption of prejudice has been overcome by the circumstances and content of the nondisclosure as well as the strength of the case. Moreover, unlike the *Diaz* court, while we recognize that defendant was deprived of his right to exercise a peremptory challenge based on the late disclosure of the relationship between the family members and jurors, we decline to adopt what amounts to nearly a per se reversal rule. We concur with our Supreme Court that such late disclosure should be reviewed as jury misconduct applying a rebuttable presumption of prejudice.

*2. Was Defendant Within the Class of Persons Whose Conduct Is Proscribed by Section 273ab?*

 Defendant claims that he does not fall within the definition of the elements of the offense because he did not have care and custody of the child. As enacted in 1994, section 273ab provided: "Any person who, having the care or custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, shall be punished by imprisonment in the state prison for 15 years to life. Nothing in this section shall be construed as affecting the applicability of subdivision (a) of Section 187 or Section 189." (Stats. 1994, First Ex. Sess. 1993-1994, ch. 47, § 1.)[2]

Defendant relies on *People* v. *Heitzman* (1994) 9 Cal.4th 189 [37 Cal.Rptr.2d 236, 886 P.2d 1229]. In that case, the court considered the definition of caretaker with regard to elder abuse. Defendant claims that he was not the caretaker of the child and thus not a person who falls within the purview of the statute. In *Heitzman,* the defendant was a daughter who visited with her father, the victim, but did not live with him. Under those circumstances, the court held that there was no duty to care for her father since she was not his caretaker. However, we do not find the holding in *Heitzman* helpful in resolving this case because clearly the defendant in that matter had no custody or control over the elder. We do agree with defendant that the provisions of section 368, provide a guideline from a parallel statute designed to protect our elderly population from abuse. In section 368, subdivision (f), "caretaker" is defined as "any person who has the care, custody, or control of or who stands in a position of trust with, an elder or a dependent adult." Since the statutes were both enacted to protect those who need special protection because of age and vulnerability, we find no special meaning to the terms "care and custody" beyond the plain meaning of the terms themselves. The terms "care or custody" do not imply a familial relationship but only a willingness to assume duties correspondent to the role of a caregiver.

Here, the jury instructions included CALJIC No. 9.36.5 (1995 new). That instruction provides, "Every person who, having the care or custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, is guilty of a violation of Section 273ab of the

[2]In 1996, the prison term was increased to 25 years to life. (Stats. 1996, ch. 460, § 2.)

Penal Code, a crime. [¶] Great bodily injury means significant or substantial bodily injury or damage; it does not mean trivial or insignificant injury or moderate harm. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A person had the care or custody of a child under eight years of age; [¶] 2. That a person committed an assault upon such child; [¶] 3. The assault was committed by means of force that to a reasonable person would be likely to produce great bodily injury; [¶] 4. Such assault resulted in the death of the child."

In this case, the child lived in the house at the invitation of defendant. Defendant assumed a parent-like role. He was, as mother described, a surrogate father for the child. Clearly under the above test, defendant had a duty as a caretaker to this child. Substantial evidence exists in this record to support the jury's determination that defendant was a person having custody and care of this child irrespective of formal familial relationship.

### 3. Did the Court Err in Denying Defendant's Request to Instruct the Jury With the Pre-1994 Version of CALJIC No. 2.90?

■ Defendant contends that the court erred in denying his request that the jury be instructed during his trial which occurred in 1996 with the previous version of CALJIC No. 2.90 which included the term "moral certainty." Generally, this issue has been raised by defendants who challenge the giving of the 1994 revision. The courts have resolved that issue by finding that that the removal of the terms "to a moral certainty" and "depending on moral evidence" does not unconstitutionally reduce the People's burden of proof. (See *People* v. *Freeman* (1994) 8 Cal.4th 450, 504 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888]; *People* v. *Aguilar* (1997) 58 Cal.App.4th 1196, 1208-1209 [68 Cal.Rptr.2d 619]; *People* v. *Barillas* (1996) 49 Cal.App.4th 1012, 1022 [57 Cal.Rptr.2d 166]; *People* v. *Carroll* (1996) 47 Cal.App.4th 892, 895-896 [54 Cal.Rptr.2d 868]; *People* v. *Hurtado* (1996) 47 Cal.App.4th 805, 815-816 [54 Cal.Rptr.2d 853]; *People* v. *Tran* (1996) 47 Cal.App.4th 253, 262-263 [54 Cal.Rptr.2d 650]; *People* v. *Light* (1996) 44 Cal.App.4th 879, 884-889 [52 Cal.Rptr.2d 218]; *People* v. *Torres* (1996) 43 Cal.App.4th 1073, 1077-1078 [51 Cal.Rptr.2d 77].)

For the reasons stated in these cases, we find that the giving of the revised instruction was appropriate. Indeed, it was required by the 1995 amendment to section 1096. We therefore find that the trial court did not err in giving the revised instruction, even over defendant's objection.

## DISPOSITION

The judgment is affirmed.

McKinster, J., and Richli, J., concurred.

A petition for a rehearing was denied April 14, 1998, and appellant's petition for review by the Supreme Court was denied June 10, 1998.