Filed 5/7/13  P. v. Arismendez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| THE PEOPLE, | C070247 |
| Plaintiff and Respondent, | (Super. Ct. No. 11SCR07209) |
| v. | |
| ANGEL LEE ARISMENDEZ, | |
| Defendant and Appellant. | |

Defendant Angel Lee Arismendez stabbed his girlfriend K. outside the car they had just gotten out of, while two of K.'s children (N. and B.) were in the backseat.  A jury found defendant guilty of assault with a deadly weapon (count I), assault with force likely to produce great bodily injury (count II), battery causing great bodily injury (count III), corporal injury on a cohabitant (count IV), and child endangerment of N.  (count V).  Defendant admitted he had one prior robbery conviction.  The court sentenced him to 18 years and eight months in prison.

On appeal, defendant raises five contentions related to the sufficiency of evidence and sentence.  We agree with three.  One, defendant's conviction for child endangerment (count V) must be reversed (and the attached enhancements stricken) because there was

1

insufficient evidence defendant had care or custody of N.  Two, defendant's conviction for assault with force likely to produce great bodily injury (count II) must be reversed because that offense is not a separate offense from assault with a deadly weapon (count I).  And three, defendant's one-year enhancement pursuant to Penal Code[1] section 667.5, subdivision (b) must be stricken because defendant neither admitted he had been convicted of the underlying felony (which was possessing an illegal weapon) nor did the People present evidence to support the enhancement.

FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2011, defendant had been dating K. for about two and one-half months.  He spent the night at her apartment "[j]ust about" every day.  Her four children lived in the apartment as well, including three-year-old N.

That day, K.'s mother lent her car to defendant and K.  Defendant dropped off K.'s mother at a 12:30 p.m. hair appointment.  Defendant was then supposed to go back to the apartment and get K. to take her to a 1:00 p.m. "WIC" appointment.

In the "early afternoon," one of the residents saw K. driving the car "a little fast" into the apartment complex.   K. parked and jumped out of the car, waving her hands like she was getting stung by a bee or wasp.  Defendant got out of the "passenger side" and "t[ook] off down the drive[way]."  K. "started after him" but then returned to the car.  When the resident saw that K.'s arm was bloody, K. told her she was "all right" and then drove off in the car to the hospital.

At 2:13 p.m., K. arrived at the hospital's emergency room.  She was bleeding from three stab wounds on her upper arms and one on her right cheek.  She told the hospital, "[s]he got between two men who were fighting," but the hospital did not believe her.  She was discharged.

---

[1]     All further section references are to the Penal Code.

Police found K. at her apartment in a closet with defendant. At 5:00 p.m., police interviewed her. She said she was arguing with defendant about "life and money and everything." She then "entered the passenger door," and hit defendant on the side of his head with her fist. She got out of the car, and then defendant stabbed her. At the time she was stabbed, they were near the driver's side door, which was open. Defendant ran off, and she chased him because he had her phone. Two of her children were in the backseat.

The car was returned to K.'s mother that day. There was a cut in the steering wheel and blood on the driver's side area.

Five days after the stabbing, Child Protective Services (CPS) interviewed K. The CPS worker told K. there had been a referral about the incident, and the worker read it to her. As read to K., the referral stated that K. punched defendant on the side of the face, they both got out the car, defendant stabbed K., and then he ran. "[D]uring this altercation, [N.] and [B.] were in the back seat [*sic*] of the vehicle." "[T]hree year old [N.] was able to talk about mommy and 'daddy' being in a fight.' "

K. talked to defendant on the telephone while he was in jail for stabbing her. She asked defendant how she was going to explain the stabbing. He told her, "At the high school, yeah. At the high school when I fuckin' dropped the fuckin' knife cause I was drunk or whatever. . . ." At trial, K. testified she was injured during a gang fight at the high school.

3

DISCUSSION

I

*There Was Insufficient Evidence Of Child Endangerment (Count V)*

Defendant contends there was insufficient evidence of child endangerment because there was no evidence he had care or custody of N.**2**

"[T]he elements of child endangerment [a]re 1) the defendant having care and custody of the victim, 2) under circumstances likely to produce great bodily harm or death, 3) commits criminal negligence." (*People v. Kinkead* (2000) 80 Cal.App.4th 1113, 1119, fn. 10.)

"The terms 'care or custody' do not imply a familial relationship but only a willingness to assume duties correspondent to the role of a caregiver." (*People v. Cochran* (1998) 62 Cal.App.4th 826, 832.) In *Cochran*, the defendant unsuccessfully argued that his conviction for child endangerment had to be reversed because he did not have care or custody of the child victim. (*Id*. at pp. 832-833.) The record showed the following: the defendant invited the mother and the child to live with him at the home of his grandparents; the defendant, the child, and the mother all slept in the same room; and the "mother described [the] defendant as the child's surrogate father in that he watched and fed the baby, gave her baths and helped put her down for naps." (*Id*. at p. 829.) The appellate court explained its holding as follows: "Clearly under the above test, [the] defendant had a duty as a caretaker to this child. Substantial evidence exists in this record to support the jury's determination that [the] defendant was a person having custody and care of this child irrespective of a formal familial relationship." (*Id*. at p. 833.)

---

**2** The information specified only N. as the victim.

4

We cannot say the same here because there is no evidence defendant had care or custody of N., namely that he had demonstrated a "willingness to assume duties correspondent to the role of a caregiver." (*People v. Cochran*, *supra*, 62 Cal.App.4th at p. 832.)   Simply put, there was no evidence defendant cared for N. or had custody of her. The most at trial about defendant's role in N.'s life was as follows:  he lived with N., her three siblings, and her mother for two and one-half months; he was in the same car as N. when K. was driving; and N. referred to defendant as " 'daddy' " in one interview.   This evidence is silent on what defendant did to actually care for N.

The People's argument on appeal  is equally unpersuasive.  They argue defendant "played a comfortable role as a member of [K.]'s family," pointing out he was allowed to borrow K.'s mother's car to drive the mother to a hair appointment and K. to a "child care appointment" (presumably the "WIC" appointment).  (Italics omitted.)  Again, none of this evidence demonstrates what defendant did to care for N.  Similarly unpersuasive is the People's unsubstantiated argument that because K. was driving the car, "it was logical for the jury to infer [defendant] was charged with caring for the children as [K.] drove." There was no evidence to support this claim either.

Finally, we note the prosecutor's argument at trial about the care or custody element was similarly lacking.  The prosecutor never brought up this count in his closing statement.  When defendant then argued at the beginning of his closing statement that there was no evidence he had care or custody of the children, the prosecutor's only argument in rebuttal as to this point was, "Who was in the [car]?  The defendant, [K.], and [K.'s children.]  That's enough."  As we have just explained, however, it is not.

Given our conclusion there was insufficient evidence to support the child endangerment charge, we will also strike the enhancements related to that charge (and therefore not address defendant's substantive arguments as to those enhancements).

## II

*Defendant's Conviction For Assault With Force*
*Likely To Produce Great Bodily Injury (Count II) Must Be*
*Stricken Because It Is Not A Separate Offense From His Conviction*
*For Assault With A Deadly Weapon (Count I)*

Defendant contends his conviction for assault with force likely to produce great bodily injury (count II) must be stricken because it is not a separate offense from his conviction for assault with a deadly weapon (count I).  As the People concede, defendant is correct.

"Section 245 . . . defines only one offense, to wit, 'assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury. . . .'  The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon."  (*In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5.)

We will strike defendant's conviction for assault with force likely to produce great bodily injury (count II) and its related enhancements instead of his conviction for assault with a deadly weapon (count I) because when the crime is committed with a deadly weapon, the crime is necessarily a serious felony and when it is committed only with force likely to produce great bodily injury, it is not necessarily so.  (See *People v. Delgado* (2008) 43 Cal. 4th 1059, 1065.)

## III

*Defendant's Counsel Was Not Ineffective For Failing To Raise*
*A Double Jeopardy Challenge To Defendant's Sentence*

Defendant contends that his convictions for assault with a deadly weapon (count I), assault with force likely to produce great bodily injury (count II), and battery causing great bodily injury (count III) must be stricken in light of his conviction for corporal injury on a cohabitant (count IV) because each of these counts depends on the

6

same indivisible act. He bases this argument on the double jeopardy clauses of the state and federal Constitutions. He argues that because each of these counts has attached to it a great bodily injury enhancement, each is a serious felony that qualifies as a strike in a subsequent prosecution for any felony, and that "[i]f the court allows all four convictions to stand, [he] is more likely to receive a life sentence under the three strikes law for . . . a . . . future felony than he would with only one new strike." Recognizing this contention was not raised in the trial court, defendant further contends his counsel was ineffective for not objecting on double jeopardy grounds. We disagree because settled law would have made any objection unmeritorious.

As defendant recognizes, our Supreme Court has held that: (1) enhancements cannot be considered for purposes of the rule prohibiting multiple convictions based on necessarily included offenses (*People v. Sloan* (2007) 42 Cal.4th 110, 123) and (2) the lower courts are obligated to follow the holdings of our Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450). For these two reasons, and because the convictions themselves are not for necessarily included offenses, counsel's objection would have been unmeritorious. (See *People v. Osband* (1996) 13 Cal.4th 622, 678 [failure to make unmeritorious objections does not constitute ineffective assistance].)

IV

*Defendant Has Forfeited His Claim That The Trial Court*

*Failed To Advise Him Of The Penal Consequences Of*

*Admitting A Prior Robbery Conviction*

Defendant contends the enhancements relating to his admission that he had a prior robbery conviction must be stricken because the current court failed to admonish him of the penal consequences of his admission. As we explain, defendant has forfeited this contention.

It is a "judicially declared rule of criminal procedure" that a defendant be advised of the penal consequences of his admission. (*In re Yurko* (1974) 10 Cal.3d 857, 864.)

7

"Consequently, when the only error is a failure to advise of the penal consequences, the error is waived if not raised at or before sentencing." (*People v. Wrice* (1995) 38 Cal.App.4th 767, 770-771.)

Here, there was no objection alerting the court to its failure to properly advise defendant. As such, defendant's contention on appeal is forfeited. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 [the correct legal term for loss of a right based on failure to assert it in a timely fashion is forfeiture, not waiver].)

V

*Defendant's One-Year Enhancement For A Prior Prison Term Must Be Stricken*

The information alleged a three-year enhancement for defendant's prior robbery conviction pursuant to section 667.5, subdivision (a) and a one-year enhancement for possessing an illegal weapon pursuant to 667.5, subdivision (b). Defendant's probation report stated he served a single prison term for both convictions. When the court took defendant's admission to these prior offenses, the court inexplicably had defendant admit his robbery conviction twice without asking him about his prior conviction for possessing an illegal weapon.

Defendant contends his one-year enhancement must be stricken because he never admitted the conviction for possessing an illegal weapon and, in any event, he never served a separate prison term for that offense. As the People concede, he is correct on both points. Defendant admitted only the robbery conviction, albeit twice. And, even if he had admitted the possessing an illegal weapon conviction, it could not be the basis of the one-year prior prison term because he served only one period of incarceration for that offense and the robbery. (See *People v. Medina* (1988) 206 Cal.App.3d 986, 991 ["the obvious intent of section 667.5 is to count each period of confinement in prison as one that can be used as an enhancement, not to enhance a defendant's sentence more than once for a single prison confinement where there were multiple counts"].) As such,

8

defendant's one-year enhancement pursuant to section 667.5, subdivision (b) must be stricken.

## DISPOSITION

Defendant's convictions for assault with force likely to produce great bodily (count II) and child endangerment (count V) are reversed and their attached enhancements stricken. Defendant's one-year enhancement pursuant to section 667.5, subdivision (b) is also stricken. The case is remanded to the trial court for resentencing.


       ROBIE     , J.


We concur:


    NICHOLSON   , Acting P. J.


     DUARTE    , J.