Filed 2/25/16  P. v. Turpitt CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>IRVIN LEEROY TURPITT, JR.,<br><br>    Defendant and Appellant. | F069074/F069102<br><br>(Super. Ct. Nos. 1439597, 1444034, 1444516, 1444605, 1464736)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Marie S. Silveira, Judge.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Irvin Leeroy Turpitt, Jr. entered into plea bargains in four cases, and was found guilty of numerous offenses by a jury in a fifth case. In the case tried to the jury, Turpitt argues the conviction on two counts was not supported by substantial evidence. We reject his argument and affirm the convictions. The remainder of Turpitt's arguments pertain to sentencing matters. We agree that two sentencing errors occurred, and will remand the matter to the trial court for resentencing. At that time, the trial court can also address the custody credits awarded to Turpitt. His final argument is moot since it deals only with the abstract of judgment and a new one will have to be prepared after resentencing.

### FACTUAL AND PROCEDURAL SUMMARY

The following four cases were resolved pursuant to a plea bargain. The essence of the plea bargain was that Turpitt would plead no contest to the charges identified below, and would be sentenced to a total term of nine years in jail. However, he would be required to serve only one year in jail and eight years on postrelease supervision.

*Stanislaus Superior Court Case No. 1439597*

The original complaint was filed on December 20, 2011, and the second amended complaint was filed on January 5, 2012. The second amended complaint charged Turpitt with two counts of auto theft (Veh. Code, § 10851, subd. (a)), receiving stolen property (Pen. Code, § 496, subd. (a)),[1] grand theft (§ 487, subd. (a)), and receiving a stolen vehicle (§ 496d, subd. (a)). The second amended complaint also alleged as enhancements that Turpitt had suffered a prior conviction of a serious felony (§ 667, subd. (d)), and he committed these offenses while on bail for another offense (§ 12022.1).

On September 18, 2012, Turpitt pled no contest to two counts of auto theft, and receiving stolen property. The enhancements were stricken, and the grand theft and

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2.

receiving a stolen vehicle counts were dismissed. He was sentenced to 20 months in prison.

### *Stanislaus Superior Court Case No. 1444034*

The complaint was filed on April 19, 2012, and charged Turpitt with attempted grand theft (§§ 664, 487, subd. (a)), and resisting arrest (§ 148, subd. (a)(1)). The complaint also alleged as enhancements that Turpitt was on bail on two other cases when he committed these offenses (§ 12022.1), and he had two prior convictions for serious felonies (§ 667, subd. (d)).

On September 18, 2012, Turpitt pled no contest to attempted grand theft and was sentenced to four months in jail.

### *Stanislaus Superior Court Case No. 1444516*

The complaint was filed on May 4, 2012, and charged Turpitt with receiving stolen property (§ 496, subd. (a)). The complaint also alleged Turpitt committed this offense while on bail on three other offenses (§ 12022.1), and he had suffered a prior conviction for a serious felony (§ 667, subd. (d)).

On September 18, 2012, Turpitt pled no contest to the charge and was sentenced to a concurrent term of two years in jail.

### *Stanislaus Superior Court Case No. 1444605*

The complaint was filed on May 8, 2012, and charged Turpitt with one count of possession of counterfeit money (§ 476), and alleged as enhancements that he was on bail in four other cases when he committed this offense (§ 12022.1).

On September 18, 2012, Turpitt pled no contest to the charge, and admitted two of the on-bail enhancements. He was sentenced to an aggravated term of three years for the charge, plus two years for each of the enhancements, for a total term of seven years.

3.

***The New Charges Resulting in a Jury Trial (Stanislaus Superior Court Case No. 1464736)***

This complaint was filed against Turpitt on October 17, 2013. The information charged Turpitt with driving with willful disregard for the safety of persons or property of others while fleeing from a police officer (Veh. Code, § 2800.2, subd. (a)), child endangerment (§ 273a, subd. (a)), receiving stolen property (§ 496, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and misdemeanor resisting arrest (§ 148, subd. (a)(1)). The only enhancement alleged Turpitt had suffered a prior serious felony conviction, which constituted a strike within the meaning of section 667, subdivisions (b)–(i).[2]

***The Testimony***

These charges arose from two separate incidents. City of Oakdale Police Officer Andrew Russell Stever described the first incident. He was driving in the city shortly before midnight when he observed in his rear view mirror a vehicle with an inoperable brake light. He turned his marked police cruiser around and activated his overhead lights and siren with the intent of stopping the vehicle for a vehicle code violation. The vehicle with the inoperable brake light continued driving. The vehicle failed to yield at a stop sign, exceeded the speed limit at times approaching 80 miles per hour, crossed the centerline into the lane for oncoming traffic, and slid off the road when the driver lost control. Several items were thrown from the vehicle during the pursuit. The vehicle eventually drove off the road and into an orchard. The vehicle turned its lights off and

---

[2]    The information alleges Turpitt suffered a prior serious felony conviction within the meaning of section 1192.7, subdivision (c) and section 667, subdivision (d). Since these provisions are part of the Three Strikes law, we assume the prosecutor was alleging the prior conviction constituted a strike within the meaning of that law. Since the trial court sentenced Turpitt to a second-strike sentence, it appears the parties understood the allegation to be that of a strike conviction. It is unclear why the information makes an incomplete reference to the Three Strikes law. Section 667, subdivision (d), merely defines a serious or violent felony for the purposes of the Three Strikes law, and does not address the consequences to the defendant if the prior conviction allegation is found true.

4.

made several turns within the orchard.  Stever observed the vehicle slow down and the driver's door open while the vehicle continued moving forward.  After a few seconds, the vehicle stopped.  Five people (Jacob Turpitt, David Turpitt, Jamie Smith, Candace Cowell, and Deborah Forrest) exited the vehicle from the passenger side when ordered to do so by Stever.  At the time, Jacob Turpitt was four years old.  Deputies searched the orchard for the driver, but did not locate him.

Jamie Smith[3] testified that on the night in question she was in the vehicle stopped by Stever in the orchard.  She identified Turpitt as the driver of the vehicle during the pursuit.  A child was in the back seat of the vehicle, and Smith was concerned for the safety of the child.  Everyone in the vehicle asked Turpitt to stop the vehicle.  Turpitt jumped out of the vehicle before it stopped in the orchard.

Candace Graves, also known as Candace Frederick and Candace Cowell, testified in a very evasive manner.  Initially she denied knowing anything about the incident, but eventually admitted she was in the vehicle on the night in question.  However, she testified she could not recall who was driving the vehicle because she was intoxicated on prescription drugs and alcohol.  She admitted, however, that David Turpitt, Deborah Forrest, and Jacob Turpitt were in the back seat of the car with her, and that another woman (Jamie Smith) was in the front passenger seat.  She also admitted the driver jumped from the vehicle in the orchard while the vehicle was still moving, and that she told the police Turpitt was the driver of the vehicle.  She claimed she identified Turpitt as the driver of the vehicle only because she was told by the police officers that if she did not identify the driver she would go to jail, and the child (Jacob Turpitt) would be turned over to child protective services.  She named Turpitt only because Smith had told the

---

[3]     Smith was in custody at the time of her testimony because she failed to appear in response to the prosecution's subpoena in this case.

police he was the driver. The remainder of her testimony was either evasive or critical of the Oakdale Police Department.

Stever testified that Graves identified Turpitt as the driver of the vehicle on the night in question.

Stanislaus County Deputy Sheriff Veronica Esquivez testified about the second incident. Approximately one month after the above described pursuit, Esquivez was dispatched to investigate a suspicious person inside a pickup truck. When Esquivez and her partner approached the vehicle, she observed numerous items in the bed of the pickup, and Turpitt in the driver's seat. As Turpitt exited the vehicle, he attempted to run away from the officers. They caught him after about 30 to 40 feet.

Turpitt, who was wearing a black wig, told the officers he obtained the pickup from a friend named Joe. Turpitt also admitted there was methamphetamine in the vehicle. Esquivez found three small packages inside the pickup she believed contained methamphetamine. Subsequent testing by a Department of Justice criminalist established that the one bag tested contained methamphetamine, and the amount in that one bag was 0.33 grams. Esquivez testified this amount was a usable amount. She also found a pink wallet containing an identification for Rachelle Keeney, a small bag with hair dye for men, numerous keys, tools, several baseball caps, and hair extensions. The front license plate of the pickup looked real, but was made from cardboard and markers.

When Esquivez searched Turpitt, she found a driver's license, a paper with a Social Security number on it, and a bank card all in the name of Gene Barry. Turpitt also had two Department of Fish and Game licenses in his pocket in the name of Kyle Brown.

Detective Cody Williams with the Stanislaus County Sheriff's Office was also at the scene. In searching the vehicle, he found some horse tack, including two cinches, a bridle, two blankets, and a "Junior Pro Rodeo" pad. The bridle had custom shanks, which would not be readily available for purchase, and the pad was a prize won in a

competition. Turpitt claimed the items were his, but he misidentified the bit and the shanks.

Travis Caldwell testified that in approximately September 2013, some of his horse tack was stolen. He identified the items recovered from the pickup being driven by Turpitt as items of tack that were stolen from him. On cross-examination, Caldwell explained that in addition to the above items, four saddles, an air compressor, and a generator were stolen at the same time as the horse tack. Within four days, Dennis Gates returned the four saddles, although Caldwell did not know from where Gates had obtained the saddles.

Defense counsel called Brandy Martin as a witness in defense of Turpitt. Martin testified that on the night of the vehicle chase, she picked up Turpitt about 9:00 p.m. and the two spent the night together.

Christina Turpitt, Turpitt's younger sister, testified the vehicle involved in the pursuit was owned by her mother, and her mother would never let Turpitt drive the vehicle because he was too hard on vehicles. Her mother permitted her brother, David Turpitt, to drive the vehicle, although David would never allow Turpitt to drive it because if their mother learned of this fact David would not be allowed to drive the vehicle again.

Christina also testified that Rachelle Kenney, who is her close friend, reported her identification as lost or stolen a few months after the above events took place, suggesting the identification may have been simply lost in a vehicle. The two fishing/hunting licenses belonged to Turpitt's grandson.

***Verdict and Sentencing***

The jury found Turpitt guilty as charged. A court trial was held on the prior strike conviction allegation. The primary dispute was whether the prior conviction qualified as a strike within the meaning of the statute. The trial court concluded it was a strike conviction, and sentenced Turpitt to a midterm sentence of four years for count 2, and for the remaining felony counts (counts 1, 3 and 4) a total of 24 months (one-third the

midterm for each count). The trial court then doubled the sentence because of the strike prior for a total term of 12 years.[4]

The trial court next addressed the cases in which Turpitt violated his postrelease supervision. In case No. 1444605, the trial court sentenced Turpitt to eight months for the counterfeit charge (one-third the midterm), plus four years for the two on-bail enhancements. In case No. 1444516, the trial court sentenced Turpitt to eight months (one-third the midterm) for receiving stolen property, but stayed that sentence pursuant to the terms of the plea agreement. In case No. 1439597, the trial court sentenced Turpitt to four months for the attempted auto theft count, eight months for the receiving stolen property count, and eight months for the other auto theft count, each sentence representing one-third the midterm sentence for that crime. In case No. 1444034, the trial court sentenced Turpitt to four months for the attempted grand theft count. The total sentence for these cases is six years eight months. The total sentence for all cases is 18 years 8 months.

## DISCUSSION

### I. *Sufficiency of the Evidence*

Turpitt argues the evidence was insufficient for two reasons. First, he asserts the receiving stolen property count was not supported by substantial evidence because there was no evidence that he knew the property in question was stolen. Second, he asserts the child endangerment count was not supported by substantial evidence because there was no evidence he had control or custody over the child.

To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th

---

[4]     The trial court sentenced Turpitt to 30 days for the misdemeanor resisting arrest count to run concurrently with the sentences on the other counts.

8.

342, 403 (*Maury*).) The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Id.* at p. 396.) In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" (*Maury*, *supra*, at p. 403.) A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

The same standard governs in cases where the prosecution relies primarily on circumstantial evidence. (*Maury*, *supra*, 30 Cal.4th at p. 396.) We "must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" (*Ibid.*) "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054 (*Kraft*).) Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. (*Id*. at p. 1054.)

**The Receiving Stolen Property Count**

Turpitt was convicted of receiving the tack that had been stolen from Caldwell. As relevant here, the elements the prosecution was required to prove beyond a reasonable doubt were: (1) the defendant received property that had been stolen and (2) the defendant actually knew the property was stolen at the time he received the property. (§ 496, subd. (a); CALCRIM No. 1750.) Turpitt challenges the evidence on the second element. He argues that since the tack had been stolen over one month before it was found in his possession, some of the property had already been returned to Caldwell, and not all of items that were still missing when he was arrested were found in the pickup he was driving required the jury to infer that he did not know the property was stolen when it was acquired. He also argues no adverse inference that he knew the property was stolen could be drawn from the fact he fled from officers, since there were numerous other unrelated crimes for which he was wanted at the time.

While these facts are undisputed, this argument does not establish there is insufficient evidence of Turpitt's guilt. We review the whole record in the light most favorable to the prosecution to determine if there is reasonable, credible, and solid evidence of Turpitt's guilt. When conducting our analysis, we recognize that the knowledge element of the crime of receiving stolen property is normally based on an inference from circumstantial evidence. (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1019 (*Alvarado*).) We are also mindful that where the circumstances reasonably justify the jury's findings, we will not reverse the judgment simply because the circumstances might also be reconciled with a contrary finding. (*Kraft*, *supra*, 23 Cal.4th at p. 1054.)

When these principles are taken into consideration, it is apparent Turpitt's argument simply asks us to reweigh the evidence and conclude the circumstances of his arrest could be interpreted to suggest he did not know the property was stolen. This case is, however, a "routine" case as that term is used in *Alvarado*. (*Alvarado*, *supra*, 133

10.

Cal.App.3d at p. 1019.) Turpitt admitted possession of the tack when he was arrested. Moreover, his possession of the stolen tack arose from suspicious circumstances. He was parked in an orchard, had disguised his appearance, had in his possession numerous other items that did not belong to him, and attempted to run when confronted by the police.[5] These circumstances were more than sufficient to allow the jury to infer that Turpitt knew the tack was stolen. The fact there are other possible explanations for this evidence, such as he ran from the police because there was a warrant for his arrest, or that some of Caldwell's stolen items had been returned to him while others were still missing, are all arguments to be made to the jury to suggest an inference other than knowledge of the stolen nature of the property. However, the jury rejected this alternative inference, and our review is limited to determining whether there is sufficient evidence to support the verdict, and there is no doubt that these circumstances support the inference drawn by the jury. Accordingly, we reject Turpitt's argument.

**The Child Endangerment Count**

Turpitt was convicted in count 2 with child endangerment in violation of section 273a, subdivision (a). The elements the prosecution was required to prove beyond a reasonable doubt to support this conviction were: (1) Turpitt had care or custody of the child and (2) Turpitt willfully caused, or willfully and as a result of criminal negligence, permitted the child to be placed in a situation where his person or health may be endangered. (CALCRIM No. 821.)

Turpitt's argument focuses on the first element of the crime. He argues, in essence, that because his nephew was in the back seat of the vehicle with his father and two other adults, then he did not have care or custody of the child within the meaning of

---

[5] Turpitt argues in his reply brief the People changed their theory of the case in their respondent's brief. He bases this argument on the reference to the several items that belonged to other people found in his possession when he was arrested. We understand the People to be arguing that because Turpitt had numerous items in his possession that did not belong to him, the jury could reasonably infer the tack was stolen.

11.

the statute. To support his argument, Turpitt attempts to distinguish a similar case, *People v. Morales* (2008) 168 Cal.App.4th 1075 (*Morales*). As relevant here, Morales was driving a vehicle with a 16-year-old girl in the passenger seat. When a police officer attempted to stop the vehicle for a traffic violation, Morales attempted to evade the police officer, but eventually hit a telephone pole. Morales argued on appeal his conviction for violating section 273a, subdivision (a) was not supported by substantial evidence because he did not have care or custody of the girl. The appellate court rejected the argument.

> "Section 273a does not require that a defendant be related to a child. As stated in *People v. Cochran* (1998) 62 Cal.App.4th 826, 832, '[t]he terms "care or custody" do not imply a familial relationship but only a willingness to assume duties correspondent to the role of a caregiver.' There is 'no special meaning to the terms "care or custody" beyond the plain meaning of the terms themselves' that is indicated or intended. [Citation.] Interpreting *Cochran*, the court in *People v. Perez* (2008) 164 Cal.App.4th 1462, 1476, stated: '[T]he relevant question in a situation involving an individual who does not otherwise have a duty imposed by law or formalized agreement to care for a child (as in the case of parents or babysitters), is whether the individual in question can be found to have undertaken the attendant responsibilities at all. "Care," as used in the statute, may be evidenced by something less than an express agreement to assume the duties of a caregiver. That a person did undertake caregiving responsibilities may be shown by evidence of that person's conduct and the circumstances of the interaction between the defendant and the child; it need not be established by an affirmative expression of a willingness to do so.' (Fn. omitted.)

> "[The girl] was physically in the care of [the] defendant who was transporting her when he endangered her life by his conduct. As a passenger in his speeding car, [the girl] was deprived of her freedom to leave, and she had no control over the vehicle. The jury could reasonably conclude that in taking it upon himself to control [the girl's] environment and safety, [the] defendant undertook caregiving responsibilities or assumed custody over her while she was in his car. Viewing the record in the light most favorable to the trial court's judgment, we conclude that substantial evidence supports the verdict." (*Morales, supra*, at pp. 1083–1084.)

12.

The same analysis is applicable here. The child was a passenger in the vehicle driven by Turpitt when Turpitt decided to attempt to avoid the police. As Turpitt recognizes in his opening brief, the child and the adults in the vehicle were "basically stuck and were relatively powerless to control their own environment and safety." Turpitt was in complete control of the environment and safety of each of the passengers, including the child. As in *Morales*, we conclude that these facts provide substantial evidence to support the verdict.

Turpitt attempts to distinguish *Morales* by arguing he did not assume caregiver duties because the child's father was in the vehicle at all times and, thus, the child was in the care of other adults. However, only Turpitt had control over the vehicle. The other adults had no choice in Turpitt's decision to evade the pursuing officers, or his choice to drive in a dangerous and reckless manner. This fact is evidenced by Smith's testimony that all of the passengers urged Turpitt to stop the vehicle. Accordingly, the only adult in the vehicle who chose to put the child in danger was Turpitt. As such, the jury could reasonably conclude Turpitt had care or custody of the child within the meaning of the statute.

## II.     Section 654

Section 654 prohibits multiple punishment for an act that is punishable in different ways by different provisions of law. (*People v. Jones* (2012) 54 Cal.4th 350, 356.) The trial court imposed consecutive sentences on Turpitt for both the child endangerment count as well as the evading a police officer count. Turpitt argues that because both of these convictions arouse out of the same act of driving in a reckless and illegal manner while evading the police that the trial court should have stayed the sentence on one of the convictions pursuant to section 654. The People concede, and we agree, the trial court erred. Since the sentence for the evading a police officer count was shorter, we will order the sentence on that count stayed pursuant to section 654.

13.

### III. *The Section 12022.1 Enhancements*

In case No. 1444605, Turpitt pled guilty to the possession of counterfeit money charge and admitted two "on bail" enhancements pursuant to section 12022.1. When the trial court sentenced Turpitt in this matter, it sentenced Turpitt to one-third the midterm for the possession of counterfeit money count, but imposed the full term of two years for the two enhancements. Turpitt argues, and the People concede, that since the sentence on this case was subordinate to the other cases, the punishment for these enhancements should have been imposed at one-third the midterm sentence or, in this case, eight months each.

Section 1170.1, subdivision (a) provides that when a trial court is imposing sentence on a subordinate term, the term "shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses." Accordingly, the trial court erred when it imposed sentence on these enhancements at the full term of two years.

### IV. *Custody Credits and Abstract of Judgment*

Turpitt argues the trial court erred when it awarded him custody credits because some of the credits were awarded only to a count that was stayed, thus providing him no actual benefit. The People assert the issue should be addressed in the trial court.

We have reviewed the issue and conclude that much of Turpitt's argument is based on assumptions that we cannot verify in this record since the actual awarding of custody credits by the trial court was rather perfunctory. Accordingly, we agree with the People that the matter should be addressed in the trial court, giving full consideration to the argument made in this appeal.

Turpitt's final argument is that the abstract of judgment contains a mistake in that it added the actual sentences imposed incorrectly. Since a new abstract of judgment must

14.

be prepared because of the sentencing errors identified above, we need not address the issue.

## DISPOSITION

The convictions are affirmed. The matter is remanded to the trial court for resentencing so that the sentence on the evading a police officer count may be stayed pursuant to section 654, and to permit the trial court to sentence Turpitt to one-third the midterm for the two section 122022.1 enhancements in case No. 1444605. At that time, the trial court should provide a complete record of the custody credits to which Turpitt is entitled in this rather complicated sentencing case, and prepare a new abstract of judgment.

_____
KANE, Acting P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
SMITH, J.

15.