Filed 8/4/16  P. v. Toms CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHAWN TOMS,<br><br>    Defendant and Appellant. | B262124<br><br>(Los Angeles County<br>Super. Ct. No. KA105561) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas C. Falls, Judge.  Affirmed.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Shawn Toms guilty of, among others, assault with a deadly weapon, a car. During trial, Juror No. 8 disclosed she knew the victim. After an inquiry, the trial court refused to discharge the juror. Toms contends that the failure to discharge the juror violated his state and federal constitutional rights. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual background.

Olga Guerra owned a gold Mercedes. On April 18, 2014, it was stolen. A few days later, on April 21, Anthony and Cristina Anguiano were home.[1] Upon investigating a noise from the garage, they saw a man in their car. Cristina yelled. The man ran to a brown or gold Mercedes with Penske plates, driven by a second man, who Cristina identified at trial and from a photographic six pack as Toms.[2] Cristina was in front of the Mercedes when Toms stepped on the gas. "At that point, I put my hands on the hood of the car to push myself away from the car, and my forearm struck the front" of the car. After the car struck Cristina's forearm, the car stopped and the second man got in. Cristina was still standing "in the corner of the vehicle" when it moved and struck her again. Cristina "rolled off the car." The car "made her spin around the car with her arm." Cristina's forearm was bruised, and she "got hit" on her thigh.

Toms was arrested later that day about four miles away. He was next to a gold Mercedes with Penske plates, which Guerra later identified as her car. Toms's fingerprints were on the car.

### II. Procedural background.

On August 28, 2014, a jury found Toms guilty of: count 1, first degree burglary (Pen. Code, § 459),[3] and of count 2, assault with a deadly weapon, a vehicle (§ 245,

---

[1] For clarity, we refer to the Anguianos by their first names.

[2] Anthony could not identify either man.

[3] All further undesignated statutory references are to the Penal Code.

subd. (a)(1)).  As to count 1, the jury found true the allegation that in the commission of the crime, another person other than a second participant, was present in the inhabited dwelling house.  The jury found Toms not guilty of count 3, unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)).

On January 30, 2015, the trial court sentenced Toms, on count 1, to four years, doubled to eight years based on a prior strike which Toms had admitted, and on count 2, to a consecutive two years.  The court imposed a consecutive five-year term under section 667, subdivision (a)(1).  His total term was 15 years in prison.

## DISCUSSION

### I.    The trial court did not err by refusing to discharge Juror No. 8.

A.    *Additional background.*

After prospective jurors were sworn in, the prosecutor identified witnesses, including Cristina.  When the court asked if the prospective jurors knew the witnesses, no hands were raised.  When Juror No. 8 was placed on the voir dire panel, the court asked her and the new panel members whether they could "treat all witnesses the same."  Juror No. 8 said she understood everything and agreed with the principles of law controlling the court.

Juror No. 8 lived in West Covina and was a "fragrance manager."  Single, she lived with her mother, a "housewife," and father, a supervisor at a clay company.  Neither Juror No. 8 nor her close family members or friends had been a crime victim.  Relatives had D.U.I.'s, but she didn't feel that the police mistreated them.  The juror's brother and friends were police officers, and nothing about her relationships with them would affect her ability to evaluate law enforcement witnesses.  The juror had no feelings about sitting in judgment of another.  It is undisputed that this prospective juror became Juror No. 8.

During Anthony's testimony, Juror No. 8 told the court she knew Cristina Anguiano, née Martinez.[4]  Juror No. 8 went to elementary, junior high, and high school with Cristina.  The juror had been "close" to Cristina and went to her house for birthday

---

[4]    Although it is unclear, it appears that Juror No. 8 did not state during voir dire that she knew "Cristina Anguiano" because the juror knew the witness as "Cristina Martinez."

3

parties. They lost contact after high school, although "[t]o this day, I actually have her on Facebook, and I have her sister on Pinterest and Instagram. We don't keep in tou[c]h." The juror, however, would look at Cristina's Facebook posts, the last of which was posted a few months ago. The posts were not about this case. They last saw or spoke with each other six years ago, on Facebook, when Cristina sent a message her brother had died. The juror denied it would be a problem if Cristina testified, and the juror would not automatically believe Cristina. Juror No. 8 could put "our personal to the side" and give both sides a fair trial.

Defense counsel then told the juror that he would cross-examine Cristina. He asked, "Are you –if I should question her credibility, is that something you're going to be comfortable doing?

"Juror No. 8: Yes.

"[Defense counsel]: Questioning her credibility?

"Juror No. 8: Yes.

"[Defense counsel]: You answered that a little bit slowly.

"The court: Let me put it a different way. . . . He's going to be asking her questions, and he may be suggesting through the questioning that perhaps she didn't see what she thought what she saw or maybe – I don't know – maybe she's got a reason to be lying about this. This is what a trial is all about. You throw everything in the pot, and you figure out what cooks from there. [¶] Will you be – understanding that that's what he's going to be asking, he's going to be saying, hey, I'm asking her a lot of tough questions, is that going to bother you? You're going to think [defense counsel], what an idiot, leave her alone, that was my old friend? [¶] I think that's where you were going.

"[Defense counsel]: Yes, your Honor.

"[¶] . . . [¶]

"Juror No. 8: No, I understand. I know. I will be okay with that. Like, I can put my personal business to the side and just focus on everything that's gonna go on."

The court ordered Juror No. 8 not to tell other jurors that she knew Cristina and to stay off Facebook, Pinterest, Instagram, and all social media during trial.

4

The defense asked the court to dismiss the juror, but the court deferred its ruling for further briefing. After the parties rested, the court allowed additional argument about Juror No. 8. Although the prosecutor's objection to discharging the juror was "not particularly strong", she argued there was no showing of actual bias. Defense counsel countered that the juror's relationship with Cristina made it "impossible" for the juror not to have an opinion as to whether, for example, Cristina was the type of person who would jump onto the hood of a car.

The trial court found there was no showing the juror had misled the parties and the juror's bias was not a demonstrable reality.

B.      *Juror No. 8's alleged bias does not appear on the record as a "demonstrable reality."*

"An accused has a constitutional right to a trial by an impartial jury. [Citations.] An impartial jury is one in which no member has been improperly influenced [citations] and every member is ' "capable and willing to decide the case solely on the evidence before it" ' [citations]." (*In re Hamilton* (1999) 20 Cal.4th 273, 293-294; see also *People v. Cleveland* (2001) 25 Cal.4th 466, 476; § 1120.) At any time, whether before or after the final submission of the case to the jury, upon good cause, it is shown that a juror is unable to perform his or her duty, the court may order the juror to be discharged. (§ 1089; see also *People v. Farnam* (2002) 28 Cal.4th 107, 140-141.) "A juror who is actually biased is unable to perform the duty to fairly deliberate and thus is subject to discharge." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1051.)

The standard of review applicable to removing a sitting juror requires the juror's disqualification to appear on the record as a " ' "demonstrable reality." ' " (*People v. Farnam*, *supra*, 28 Cal.4th at p. 141; *People v. Fuiava* (2012) 53 Cal.4th 622, 711; *People v. Barnwell*, *supra*, 41 Cal.4th at p. 1052.) "This standard 'indicates that a stronger evidentiary showing than mere substantial evidence is required to support a trial court's decision to discharge a sitting juror.' [Citation.]" (*Barnwell*, at p. 1052.) "[T]he reviewing court must be confident that the trial court's conclusion is manifestly supported

5

by evidence on which the court actually relied." (*Id.* at p. 1053; see also *Fuiava*, at p. 712.)

The record does not show that Juror No. 8's relationship with Cristina biased the juror in Cristina's favor. Rather, although Juror No. 8 and Cristina were "close" in school, they had not spoken in six years—and then their communication was through Facebook. Juror No. 8 repeatedly affirmed she could be fair and impartial: she could put "our personal to the side" and "just focus on everything that's gonna go on." Also, that the juror voluntarily informed the court she knew Cristina indicated her desire to perform her duties fairly and impartially and in good faith. (See, e.g., *People v. Ray* (1996) 13 Cal.4th 313, 344; see also *People v. Wilson* (2008) 44 Cal.4th 758, 823 [where a juror has unintentionally "concealed," the question is whether the juror is sufficiently biased to constitute good cause for discharge].) Indeed, the court made an express finding that Juror No. 8 "wasn't hiding anything." The trial court was in the best position to observe the juror's demeanor, and we defer to the court's credibility determination when, as here, substantial evidence supports it. (*People v. Harris* (2008) 43 Cal.4th 1269, 1305.) The record therefore supports the trial court's conclusion that any bias on the part of Juror No. 8 was not a demonstrable reality. (See generally *People v. Cochran* (1998) 62 Cal.App.4th 826, 831 [statements of jurors who knew victim's family members that they could set aside this knowledge and fairly and impartially judge case must be taken at "face value"]; *People v. McPeters* (1992) 2 Cal.4th 1148, 1174-1175 [trial court did not err by refusing to dismiss juror who knew and "thought highly" of a witness], superseded by statute on another ground as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1116.)

To the extent Toms suggests that it was unreasonable to expect Juror No. 8 to be impartial because so much of the case was dependent on Cristina's testimony, we disagree. True, Cristina was the only witness who identified Toms as the getaway driver. But other evidence tended to establish that fact: he was arrested the same day, four miles away, standing next to a car that matched the description of the suspects' car and had his fingerprints on it. Also, defense counsel suggested, through his cross-examination of

Cristina and in closing argument, that Cristina was not being truthful about the assault with a deadly weapon. Arguing that Cristina jumped on the car's hood, he asked, "Who is assaulting who?" But, in addition to Cristina's denial she jumped on the car, Anthony testified that Cristina did not jump on the car's hood. Therefore, the case was not solely dependent on whether Juror No. 8 believed Cristina. In any event, as we have said, nothing in the record demonstrates that Juror No. 8 could not evaluate this evidence fairly and impartially. Toms's federal and state constitutional rights were not violated.

## II. The trial court's inquiry was adequate.

Toms also contends that the trial court failed to conduct an adequate inquiry into whether Juror No. 8 should be discharged. We disagree.

Once a trial court is put on notice that good cause to discharge a juror may exist, the court has a duty to make whatever inquiry is reasonably necessary to determine whether the juror should be discharged. (*People v. Cowan* (2010) 50 Cal.4th 401, 505-506; *People v. Martinez* (2010) 47 Cal.4th 911, 941-942.) Whether to investigate the possibility of juror bias, incompetence, or misconduct and the scope of any such investigation rests within the trial court's sound discretion, and the court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1284; *Cowan*, at p. 506.)

Here, Toms describes the trial court's inquiry as "cursory." Our description of the proceedings belies that characterization; namely, the court questioned Juror No. 8 extensively about her relationship with Cristina while in school and on social media. Defense counsel also questioned the juror. Toms, however, describes the court's question—"Will you be able to give both sides a fair trial in this matter?"—as inadequate to establish the juror's impartiality. But the juror unequivocally responded to that question in the affirmative, i.e., she could be fair and impartial. Moreover, what it meant to be fair and impartial was clear, both as a matter of common sense and from voir dire. Nothing more was required of the trial court. (See, e.g., *People v. Ray*, *supra*, 13 Cal.4th at pp. 343-344 [no further inquiry into possible juror bias or misconduct necessary where

7

record contained no evidence of juror bias]; compare *People v. McNeal* (1979) 90 Cal.App.3d 830 [notwithstanding juror's statement she could be fair, court's inquiry inadequate where it failed to ask juror about her knowledge of facts apparently learned from a source other than evidence at trial].)

Nor do we agree the trial court implied that the only issue was whether the juror would harbor ill will towards defense counsel were he to challenge Cristina's credibility. Rather, defense counsel told the juror he would cross-examine Cristina, and "if I should question her credibility, is that something you're going to be comfortable doing?" The juror answered, "Yes." The court then explained that defense counsel might suggest through his questions that Cristina didn't "see what she thought what she saw" or "maybe she's got a reason to be lying about this." The juror said this would not bother her. Rather, she "underst[oo]d. I know. I will be okay with that. Like, I can put my personal business to the side and just focus on everything that's gonna go on." The court's and counsel's inquiry thus established that the juror could fairly and impartially evaluate Cristina's credibility *and* not hold any suggestion that Cristina was unbelievable against defense counsel.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

HOGUE, J.*

---

*   Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.